## Eliza M. Pendleton *vs.* Thomas M. Hughes, impleaded &c.

Where the defendants, at the time of making a fraudulent transfer of their property, had in their possession a 5-20 U. S. bond for $1,000, belonging to the plaintiff, which they afterward converted to their own use; *held* that although the plaintiff was not, at the time of making the conveyance, a creditor, in the ordinary meaning of that term, yet she was equitably entitled to protection against the fraudulent transfer, to the same extent as if she had then held a debt for $1,000 against the defendants.

A conveyance, voluntary and without consideration, of land, was executed by H. and his wife, when he was in embarrassed circumstances, and shortly before his failure, to his wife's mother, with the understanding, and upon the condition that the premises should be conveyed back to H.'s wife. *Held* that without reference to the conduct of the grantee, the deed was fraudulent and void, by reason of the conduct of the grantors, alone.

Where the direct effect of a conveyance, and of omitting to put the same on record, is to defraud a creditor of the grantor who, relying on the grantor's apparent ownership of land, has entrusted property to him, or the firm of which he is a member, and the same has been embezzled and appropriated, such conveyance will be held fraudulent and void as to the creditor.

And this, whether the creditor occupied the position of a creditor before, or not until after, the execution of the fraudulent conveyance. In either case he is entitled to relief by a judgment declaring the conveyance fraudulent and void, and that it be cancelled of record, &c.

Where a deed, executed by H. and wife to M., was put into the hands of a third person, with directions to obtain a deed from M. to H.'s wife, and was delivered upon that condition, and M. retained the same, and refused to execute a deed to H.'s wife; *held* that the deed to M. never became operative, by reason of the non-performance of the condition on which it was delivered.

The facts found by a judge, and incorporated in the record of judgment, must stand as the findings in the case; and neither a judge or a referee can find facts contradictory thereto.

If such findings are erroneous, application must be made to the court, to send them back for correction.

The only findings that a judge or referee can make, at the time of settling the case or exceptions, are findings *in addition* to those previously found, and not in contradiction thereof.

THIS was an action by a judgment creditor, whose execution had been returned unsatisfied, to set aside a deed of a house and lot, the apparent title to which was in the defendant Mary Ann Heath. It was tried at the Monroe Special Term, in December, 1871,

and a judgment entered in favor of the plaintiff; from which the defendants Hughes and wife appealed.

The opinion states the material facts.

*H. Humphrey,* for the appellants.

I. The finding of the circuit judge, that the deed was not delivered so as to become valid and operative, and that the delivery was conditional, was error in fact as well as in law. The delivery of the deed to Mrs. Hughes was alleged in the complaint, and not denied in any answer. So also was the agreement that Mrs. Heath was to convey the property immediately to Mrs. M. E. Hughes, her daughter. These facts, alleged in the complaint and not denied in the answer, are to be taken to be true. (*Code,* § 168.) Such a delivery cannot be conditional. In *Lawton* v. *Sager,* (11 *Barb.* 349,) it is said, "a deed absolute on its face cannot be delivered to the grantee conditionally. The delivery is necessarily absolute.".

II. The conveyance to Mrs. Mary Ann Heath, in pursuance of an agreement, on her part, to convey the estate so conveyed, immediately to her daughter, Mary E. Hughes, vested the latter with an equitable title indefeasible by any subsequent creditor. If this be not so, equity will permit her to perpetrate a fraud, and hold thereby to her own use, an estate received to be conveyed to another. (*Story's Eq. Jur.* §§ 768–1265.) Again; it is a case of part performance, where Mary E. Hughes and her husband cannot be put in *statu quo.* She has parted with her dower, and he with his fee. (*Story's Eq.* § 759, *and cases there cited. Id.* §§ 761, 772–774.)

III. The recording of the deed was an attempt on the part of Heath, not to defraud creditors, but to defraud Mrs. Hughes, and can have no bearing on the question of fraud in the conveyance of February 15, 1868, to Mrs. Hughes.

IV. The finding as a conclusion of law, that the deed

from Hughes and wife to Mary Ann Heath, was fraud-
ulent and void as against creditors, is not a conclusion
of law, but of fact; so declared by statute. (3 *R. S.
part* 2, *tit.* 3, § 5.)

V. The findings in the case, made as they are, on
hearing of both parties, are to control, and not those
in the judgment roll, drawn up by the counsel and pre-
sented *ex parte* to the judge, and so signed. An addi-
tional reason for this is, that the rule that the court will
not look out of the findings in the case for facts, prevails
in this court, as well as in the Court of Appeals, in all
cases except where there is a strong preponderance of
evidence against the finding. The words in rule 41:
"The justice thereupon shall settle and correct the case
according to the facts, and shall at the same time find
upon such other questions of fact as may be required
by either party," imply this. He is to settle and cor-
rect the case according to the facts. (*Johnson* v. *Whit-
lock*, 13 *N. Y.* 344. *Smith* v. *Grant*, 15 *id.* 590. *Van
Bergen* v. *Ackles*, 21 *How. Pr.* 314)

*John Van Voorhis*, for the respondent.

I. The deed made by the defendants Hughes and
wife, to the defendant Mary Ann Heath, is fraudulent
and void as against this plaintiff. 1. It was never de-
livered to the grantee named in it. This is found as a
fact by the court. The delivery to Dr. Heath was con-
ditional, and the condition never happened. 2. It was
an attempt on the part of Hughes to make a voluntary
settlement on his wife of this house and lot. The at-
tempt failed because Hughes' firm failed before the
transaction was completed. The creditors strike the
title *in transitu*, as it were. Mrs. Hughes had acquired
no vested right and no equity as against her husband's
creditors. 3. After the insolvency of her husband,
Mrs. Hughes cannot invoke the aid of equity to com-
plete an intended, voluntary settlement upon her, as

against her husband's creditors. 4. A voluntary settlement is presumptively fraudulent, as against existing creditors. (*Reade* v. *Livingston*, 3 *John. Ch.* 481, 500. *Bayard* v. *Hoffman*, 4 *id.* 450. *Verplank* v. *Sterry*, 12 *John.* 557. *Jackson* v. *Seward*, 5 *Cowen*, 67. *Seward* v. *Jackson*, 8 *id.* 430. *Van Wyck* v. *Seward*, 1 *Edw. Ch.* 327. *Van Wyck* v. *Seward*, 6 *Paige*, 67. *Wickes* v. *Clark*, 8 *id.* 165. *Hinds* v. *Longworth*, 11 *Wheat.* 213. *Dygert* v. *Remerschnider*, 32 *N. Y.* 636, 637.) The principle derived from these authorities is, that although a voluntary settlement is presumed to be fraudulent, as against existing obligations, the presumption may be rebutted and the honesty of the transaction established. This these defendants have not attempted to do. No one of them has appeared on the witness stand. They trusted to the plaintiff's inability to make out a *prima facie* case. The only evidence offered by them is testimony in another cause, where the issues in this were not involved. Every intendment and presumption is against them. 5. From the evidence it is clear that Hughes was not in a condition in which he could make a voluntary settlement on his wife. (*a.*) He did not retain any property in his hands to pay debts. This house and lot were just so much more than his capital, which was nothing. (*b.*) He transferred his furniture to his mother-in-law, at about the same time, without consideration (*c.*) His firm had, shortly before, lost twice the amount of its capital. (*d.*) He took the title in August, 1867, in order to give him credit in Wall street. Six months later, and in February, 1868, he, of a sudden, changes his mind about his credit in Wall street, and tries to get rid of the house. The inference is, that he knew then, what everybody knew a few months later, that his firm was insolvent. (*e.*) His firm owed, in November of that year, over $92,000, and was without assets. (*f.*) Neither he nor his partner give any explanation of the indebtedness. Every pre-

sumption is against them. Undoubtedly they owed most of this sum prior to February 15, 1868. They assign no cause for their failure, except the loss of $60,000, in January, 1868. There is no pretence of any sudden disaster, or of any recent losses. (*g.*) Heath stated to his brother that he was desirous of having Hughes convey the house to his wife, as "Mr. Hughes might be involved in business." This was prior to the conveyance. (*h.*) The conclusion is irresistible, from all the evidence, that both Heath & Hughes intended to cheat their creditors; also, that Heath intended to cheat Hughes and keep the house and lot in his own family. (*i.*) This deed from Hughes and wife was concealed from the public. And Wall street, which knew that Hughes held this house, and which gave him credit accordingly, did not know of the change; neither did this plaintiff. Hughes retained possession of the house, and occupied it the same as before. There was nothing done by which any creditor could ascertain that a change in Hughes' circumstances had been made. This of itself is strong evidence of fraud. (*Case* v. *Phelps*, 39 *N. Y.* 164.) 6. The same considerations prove actual fraud on his part. 7. If the act of Heath in putting this deed on record, at the time the failure of his firm became known, was intended by Heath as a delivery to his wife, (of which there is no evidence,) it was not done until Hughes was utterly insolvent. 8. The defendants do not explain just when the plaintiff's bonds were converted. Of course it is impossible for the plaintiff to know. They are presumed to have converted them as as soon as they got them, in 1867. The plaintiff says: "I expected when he (Heath) bought the bonds, he would hand them to me." They were due her at that time. They kept them. They undoubtedly converted them then, and it is more than probable that their proceeds went into this house. Can the defendants say that because the plaintiff does not know the time of this

conversion, and they will not tell, therefore the court must presume they were not converted before the failure? It is submitted they cannot, and if they were converted before the failure, at what point of time? But one answer can be given: As soon as they got them. But whether this be so or not, the plaintiff was as much a creditor before as after the conversion. The statute applies to the contingent liability, and makes the plaintiff a creditor. (*Jackson* v. *Seward*, 5 *Cowen*, 406. *S. C.*, 8 *id.* 67.) 9. Heath intended to cheat Hughes as well as creditors. The whole arrangement was planned by him. The promise to convey to Mrs. Hughes was a decoy to get the title in his wife. When he thought he had succeeded in that, he would do no more about it.

*By the Court*, MULLIN, P. J. In 1866, the defendants T. W. B. Hughes and Asahel H. Heath became partners as brokers, in Broad street, in the city of New York. About July 12, 1867, the plaintiff furnished said firm $1,000, with which to purchase for her a United States 5-20 bond of the amount of $1,000, to be delivered to her. It was subsequently claimed by them, and understood by the plaintiff, that such bond had been purchased and held by the firm, for her benefit. In the course of the same year, and in 1868, she furnished to said firm $1,500 more, of money to be invested in said bonds, and they claimed, and she understood, they had purchased and held that amount of bonds for her. Said firm paid the plaintiff some small amounts of interest on these bonds. The bonds were never delivered to the plaintiff, but were embezzled and appropriated to the use of said firm, but at what time, does not appear.

The plaintiff commenced an action for the conversion of said bonds, against the members of said firm, and recovered judgment thereon the 2d of February, 1869. An execution was issued on this judgment to the sheriff of the city and county of New York, which was returned

*nulla bona*, for nearly the whole amount of it. This action is commenced to set aside a deed of a house and lot, in the city of New York, the title to which is apparently in the defendant Mrs. Heath. The facts relating to the real estate are as follows, viz: On the 8th of August, 1867, T. W. B. Hughes purchased said house and lot for the sum of $32,000, and paid down $15,500, and assumed a mortgage thereon for $17,000. Before this purchase was made Hughes had declared his purpose to have said house and lot conveyed to his wife. The deed was not taken to her, for the reason, as stated by Hughes, that it might injuriously affect his standing in Wall street. At sometime in February, 1868, after the conveyance of said land to Hughes, at the solicitation of his wife, he promised to convey said premises to Mrs. Heath, the mother of Mrs. Hughes, to the end that they might be conveyed to Mrs. Hughes; and Mrs. Heath and her husband agreed to convey said premises to Mrs. Hughes upon the execution of the conveyance to her (Mrs. Heath.) It is claimed by the plaintiff, and found by the referee, that the conveyance to Mrs. Heath was not to be delivered until the delivery of a deed of the same from her to Mrs. Hughes.

Hughes and his wife did make and execute a deed of said premises to Mrs. Heath, bearing date the 8th of August, 1867, but it was not acknowledged, nor in fact executed, until about the 15th of February, 1868. It was delivered to Mr. Heath with directions to obtain a deed from his wife to Mrs. Hughes, and the delivery was upon that condition. Heath and wife retained the deed and refused, upon various pretexts, to execute a deed to Mrs. Hughes, and in violation of the condition and arrangement aforesaid, claimed said deed to be an absolute conveyance, the title to be retained by her until a debt alleged to be due from Hughes to her should be paid.

The firm of Heath & Hughes became embarrassed, in

January, 1868, having met with a loss of $60,000, which was the amount of their capital. They failed in November, 1868. About the time of the execution of the deed from Hughes and wife to Mrs. Heath, Hughes also transferred to Mrs. Heath all the furniture in the house. Hughes and family have continued to occupy the premises since the conveyance to Mrs. Heath.

The deed to Mrs. Heath was put on record the day before the failure of the firm of Heath & Hughes. Heath, when called on to know why he did not procure a deed from his wife to Mrs. Hughes, gave as a reason, that should the deeds to and from his wife be put on record, it might induce creditors of the firm to assail the transaction.

The judge before whom the cause was tried, ordered judgment declaring the conveyance by Hughes and wife fraudulent and void, and that it be cancelled of record, and that the lien of the plaintiff's judgment be enforced by sale on execution, or in any other legal and appropriate manner, and that the plaintiff recover against the defendants the costs of the action. Hughes and wife appeared and answered. Heath and wife did not. In January, prior to the execution of the deed from Hughes and wife to Mrs. Heath, the firm became embarrassed. They had in their possession at least the bond for $1,000, belonging to the plaintiff. It is probable that they then, in January, 1868, converted that bond to their own use.

The plaintiff was not, at the time of the conveyance, a creditor in the ordinary meaning of that term, but she was equitably entitled to protection against a fraudulent transfer of the property to the same extent as if she then held a debt for $1,000 against Heath & Hughes. (*Jackson* v. *Myers*, 18 *John.* 425. *Wilcox* v. *Fitch*, 20 *id.* 472.) The conveyance from Hughes and wife was unquestionably fraudulent. It was voluntary, being intended for the benefit of his wife, and also without

consideration. It was given when the grantor was embarrassed, and his embarrassment ended in insolvency in the fall following. Without reference to the conduct of Heath and wife, the deed was fraudulent and void by reason of the conduct of the grantor alone.

The deed was taken by Hughes in his own name instead of the name of his wife, as he had promised her he would do, in order that his credit might stand well in Wall street. The change of title was attempted to be made when his credit was impaired, and it was necessary to keep his property away from the reach of creditors. That his intention was to cheat is proved by the fact that he transferred his furniture to Mrs. Heath, for the benefit of his family, although he had not, so far as the evidence goes, made any promise to his wife, that he would give it to her.

If it be true that it was the intention of Hughes and wife to obtain a deed to her from Mrs. Heath, and to put the same on record, the effect of not recording the conveyance to Mrs. Heath was to give Hughes and his firm credit to the extent of the $15,500 which had been paid toward the house, when in fact he had, so far as he was able, divested himself of every dollar of it, and thus persons were induced to trust the firm, when, had the real state of the property been known, they would not in all probability have obtained a dollar.

The direct effect of the conveyance to Mrs. Heath, and of its concealment, was to defraud the plaintiff out of all the property belonging to her, that came into the hands of the firm after such conveyance.

If she was strictly a creditor, the conveyance would be unquestionably held fraudulent and void as to her. This proposition was directly decided in *Case* v. *Phelps*, (39 *N. Y.* 164,) and in *Savage* v. *Murphy*, (34 *id.* 508,) and *Carpenter* v. *Roe*, (10 *id.* 227.)

It would be difficult to furnish a reason for declaring such a conveyance void as to creditors, and valid as to

persons who, relying on another's ownership of property are induced to trust that other with her property which he embezzles, and appropriates the proceeds of his wrongdoing to his own use.

In this view of the case, it is not important to inquire whether the plaintiff was in the position of a creditor, before, or after the fraudulent conveyance. In either case she is entitled to the relief that has been granted her.

I concur with the learned judge who tried this case, that the deed to Mrs. Heath never became operative, by reason of the non-performance of the condition on which it was delivered. The delivery was not, as it is claimed by the appellant's counsel, to Mrs. Heath, but to her husband, to be delivered to her when she executed and delivered a deed to Mrs. Hughes. Heath could not, under such circumstances, make a delivery of the deed that would pass the title, except upon performance of the condition which he had promised to see performed.

Had the defendants, in their answer, admitted the allegation in the complaint, that the deed of Hughes and wife to Mrs. Heath had been delivered, it would have been a fact so conclusively established that neither party could be heard to controvert it, until the pleadings were amended. The defendants denied the allegation of the delivery of the deed ; it was therefore incumbent on the plaintiff to make proof of the delivery. When she attempted to support the allegation of the answer she failed, and the defendants' denial was established. The fact that it was not delivered was thus established, and the plaintiff must thereafter proceed in the case upon the assumption that the deed had never been delivered so as to pass the title. The finding that the deed was fraudulent is contained in the findings of the judge incorporated in the record of judgment.

The facts thus found must stand as the findings in the case, and neither a judge or referee can find facts contradictory thereto. If such findings are erroneous, ap-

Robinson *v.* The N. Y. Central and Hudson River R. R. Co.

plication must be made to the court to send them back for correction.

The only findings that a judge or referee can make at the time of settling the case or exceptions, are in *addition* to those previously found, and not in contradiction thereof.

The judgment must be affirmed with costs.

[FOURTH DEPARTMENT, GENERAL TERM, at Syracuse, January 7, 1873. *Mullin, Talcott* and *E. D. Smith,* Justices.]