County of Calhoun et al. v. American Emigrant Company.

1. A deed takes effect only from the time of delivery, and, when deposited as an escrow, nothing passes by it unless the condition is performed.

2. A county, by its contract for the sale of lands, whereof it was the owner, stipulated that it would not assess taxes against them until after they should be conveyed. The deed was executed, and deposited with the clerk of the board of county supervisors as an escrow, and was not to be delivered until the performance by the grantee of a certain condition. The condition was not performed; and the deed having been surreptitiously placed on record, the county brought suit to set it and the contract aside. The court, on May 20, 1872, by consent, dismissed the bill, and decreed that such dismissal should for ever bar and estop the county from setting up any right or title to the lands in controversy. In July following, the county listed certain of the lands for taxes for the years 1870 and 1871; and was proceeding to enforce collection, when the court below, upon a bill filed for that purpose by the appellee, decreed that the assessment was void, and enjoined all proceedings by the county in the matter. *Held*, that the decree was proper.

Appeal from the Circuit Court of the United States for the district of Iowa.

The facts are stated in the opinion of the court.

Submitted on the record by *Mr. James Grant* for the appellants, and on printed arguments by *Mr. C. C. Nourse* for the appellee.

Mr. Justice Clifford delivered the opinion of the court.

Power is vested in the Circuit Court to enjoin the collection of a municipal tax, where it appears that the assessors acted without authority of law, and in violation of a special contract between the municipality imposing the tax and the tax-payer.

Swamp-lands were owned by the county of Calhoun, and the record shows that the proper authorities of the county contracted to sell the same to the American Emigrant Company, the county stipulating that they would not assess any taxes against the lands until after the time the lands should be conveyed to the company.

Pursuant to that contract, the supervisors of the county made a deed of the lands to the Emigrant Company; but they recited in the instrument that the deed was deposited with the clerk of

their board as an escrow, and that it was not to be delivered to the grantees until they should execute a mortgage back to the county, conditioned to secure the full performance of the contract. Such a mortgage was never executed; but the evidence shows that the deed, by some means or agency not explained, was filed for record, and that it was duly recorded. Controversy ensued, and the county instituted a suit to set aside the contract and the deed. Pending the suit, the parties made a settlement; and, as a part of the terms of the same, the county, in consideration of certain moneys paid by the other party, consented to a decree, declaring the title to the swamp-lands, and swamp-land interests of the county, to be in the Emigrant Company.

Sufficient also appears to show, that the Emigrant Company complied with all the terms of the settlement, and that the Circuit Court, where the suit was pending, entered a decree, by consent of the parties, dismissing the bill of complaint, and decreed that the decree of dismissal should for ever operate as a bar and estoppel upon the county to set up any right or title to the lands in controversy. Prior to that decree, which bears date the 20th of May, 1872, the lands described in the contract had not been assessed for the two preceding years, as is averred in the bill of complaint and admitted in the answer.

Public property is not subject to taxation by the law of the State, and consistency forbade the county to assess the lands pending the controversy, as the deed had never been sanctioned or approved by the county or their proper officers. Instead of that, it appears that the authorities of the county uniformly maintained that the possession of the deed for registry was surreptitious and wrongful, and that the title to the lands was still in the county. They accordingly withheld the lands from taxation during those years; and the complainants charge that the treasurer, subsequent to the settlement and decree, caused the lands described in the two schedules set forth in the record to be listed and entered in the tax duplicates, and pretended to extend a computation of taxes, interest, penalties, and costs thereon, according to the rates of levy of the two preceding years, amounting to the sum set forth in the record, whereas the complainants aver that the title was decreed to them at the

time of the settlement, with the full understanding that no taxes were payable on the lands for those two years, and that the acts of the treasurer in listing the lands and assessing the taxes were without authority of law, and they pray that the pretended assessment and levy of the taxes may be decreed to be illegal, null, and void, and that the county treasurer and his agents and successors may be for ever enjoined from selling the lands, or in any manner enforcing the collection of said pretended taxes.

Process was duly issued and served, and the proper authorities of the county appeared and filed an answer, setting up the following defences: 1. That the complainants are the legal owners of the lands described in the contract, by virtue of the deed from the county. 2. That the county had no right to exempt the lands from taxes. 3. That the agreement was unauthorized and in violation of the laws of the State, and is null and void.

Certain admissions of the respondents are also contained in the answer, which it is important to notice: 1. That the deed was deposited as an escrow until a mortgage back should be executed; but the respondents aver that it was the fault of the complainants that it was not executed, and they insist that the complainants cannot claim any benefit from their own neglect. 2. That the settlement and decree were made as alleged; but the respondents aver that the settlement ratified the deed, and gave complainants a legal title relating back to the date of the execution of the same. 3. That the officers of the county did not assess taxes on the lands pending the suit; but the respondents aver that the failure of the officers to do so did not waive the right of the county to assess the lands and collect the taxes. 4. That the title to the lands in the other schedule is in the United States; but the respondents aver, that if that be so, then no sale of the same for taxes will be of any validity.

Proofs having been duly taken and the parties fully heard, the court entered a decree in favor of the complainants, and the respondents appealed to this court.

Enough appears in the pleadings in this case to show that the deed from the county to the complainants was never

delivered to the grantees until the settlement and decree; and it is settled law, of universal application, that a deed takes effect only from the time of delivery, even though it may have been fully executed at a much earlier period. *Hopkins* v. *Leek*, 12 Wend. 105; *Hardenberg* v. *Schoonmaker*, 2 Johns. 23.

Beyond doubt, the deed of the lands was delivered to the clerk of the respondents as an escrow, and subject to the condition that it should not be delivered to the grantees until they gave back a mortgage to secure the full performance of the agreement under which the deed was executed; but it is equally clear that the condition required to be fulfilled before the delivery could be made was never performed, and the rule is established by repeated decisions, that, where a deed is delivered as an escrow, nothing passes by the deed unless the condition is performed.   *Hinman* v. *Booth*, 21 Wend. 267; *Green* v. *Putnam*, 1 Barb. 500; *Russell* v. *Rowland*, 6 Wend. 666; *Pendleton* v. *Hughes*, 65 Barb. 136; s. c. 53 N. Y. 626.

Cases may be found where it is held that a deed delivered as an escrow, when the condition is performed, relates back to the time of its execution; and that proposition may be correct under certain circumstances, where the ends of justice require its application.   *Beekman* v. *Frost*, 18 Johns. 544; s. c. 1 Johns. Ch. 288.

Much would depend in such a case upon the intent of the parties, to be collected from the nature of the transaction; but it is clear that the rule cannot apply in this case, for several reasons: 1. Because the condition inserted in the instrument never was performed.   2. Because the county never relinquished their title to the lands until the settlement and decree. 3. Because the county could not assess the lands while they remained public property.   4. Because the written agreement stipulated that no taxes should be levied on the lands until after the lands should be conveyed to the complainant.

Responsive to that, the respondents suggest that it is the fault of the complainants that the deed was not delivered; but it must not be overlooked that it was the respondents or their agents who inserted the stipulation in the instrument that it should be deposited as an escrow with their clerk until a

mortgage back should be executed to secure the full performance of the terms of the written agreement.

Nothing is contained in the written agreement to warrant the respondents in requiring a mortgage back before delivering the deed; but it is expressly stipulated therein that the respondents will not assess any taxes against the lands until after the time the lands shall be conveyed to the complainants. Nor does it affect the question that the deed was previously recorded, as it is clear that the theory of the respondents throughout was that it was wrongfully procured for registry; and nothing appears to controvert their theory in that regard. By what means it was procured does not appear; but it does appear that the complainants are unable to explain the matter, for the reason that their agent who transacted the negotiations on their part is deceased.

Other suggestions failing, the respondents contend that the agreement not to tax the land before the conveyance was made is without authority of law, and is null and void; but the court here is not able to concur in that proposition, as the lands were held by the county in their proprietary right, and as such were as much subject to bargain and sale as lands held by an individual. Counties have no right to tax public property by the laws of the State; and the restriction in this case only extended to the time the conveyance should be made, in view of which the better opinion is, that, as between these parties in respect to the right of taxation, the title did not pass until the settlement and decree.

Argument is not required to prove that the respondents agreed not to tax the lands before they were conveyed, nor to prove that the deed was deposited as an escrow, nor that the taxes were levied by the treasurer subsequent to the settlement and decree, for the reason, that all three of these propositions are admitted by the answer.

Taxes imposed against those lands for the two years preceding the settlement and decree cannot be sustained in view of those admissions, especially as it also appears that the respondents, early in the month of April, 1869, instituted a suit in equity, in which they set up title to the lands, and prayed for a decree to set aside the written agreement and the deed, and that they

continued to prosecute that suit from the time it was commenced to the date of the settlement and decree.

Throughout the whole period, the county claimed the fee-simple title in these lands, and maintained the theory that the complainants were not entitled thereto, and that the deed had been illegally recorded; and it appears that they never occupied any other position in the controversy until the settlement and the decree of the Circuit Court, to which the suit was removed pending the litigation.

By that settlement, the complainants agreed to pay to the respondents the sum of $2,300 cash, and to pay all costs and expenses of the suit, including a described portion of the counsel fees of the respondents; and it is not controverted that the complainants fulfilled all the terms of the adjustment.

Viewed in the light of these suggestions, it is clear that the respondents are estopped to set up any such claim against the complainants.

Taken as a whole, the circumstances disclosed in the record satisfy the court that the settlement was made with a full understanding between the parties, that no taxes were payable on the lands for the two years next preceding the date of the decree, and that the respondents are estopped to set up any different theory in the present controversy.

Where a municipal corporation sells a tract of land, and their authorized agents represent that there are no municipal taxes assessed against the same, neither the municipality nor its proper officers can collect from the grantees taxes for preceding years, if assessed subsequently to the conveyance. Omissions resulting from inadvertence or mistake of the assessors may doubtless be corrected, and such an assessment, it is not doubted, is legal, and may be collected; but good faith forbids such an assessment as the one before the court, which was made in violation of a written agreement and of an explicit understanding between the parties in the adjustment of a pending controversy.

Decided support to the views here expressed is found in the decisions of the Supreme Court of the State, to which reference is made. *Iowa Land Co.* v. *Story County*, 36 Iowa, 50. Circumstances substantially similar were disclosed in that case, and the court say, " We do not stop to inquire what would be the

rule respecting liability for taxes as between vendor and purchaser, in cases where the latter, by performance of his contract, has become the owner, though the legal title is in the former; because we ground our support of the plaintiff's case upon this plain rule of fair dealing and the broad principles of equity, that a party shall not wrongfully withhold the title to property and the benefits of ownership thereof from one entitled thereto, and at the same time subject the property to burdens, for the benefit of the party thus wrongfully withholding the title." In other words, the county having during those years denied the right and title under which the plaintiff claims, is now equitably estopped from asserting that the plaintiff then had the title in order to give validity to the burden imposed. *Davidson* v. *Follett*, 37 Iowa, 220 ; *Adams Co.* v. *Railroad*, 39 id. 511; *Lucas* v. *Hart*, 5 id. 419 ; *Swain* v. *Seamens*, 9 Wall. 274.

Corporations, quite as much as individuals, are held to a careful adherence to truth and uprightness in their dealings with other parties ; nor can they be permitted, with impunity, to involve others in onerous obligations, by their misrepresentations or concealments, without being held to just responsibility for the consequences of their misconduct or bad faith.

*Decree affirmed.*