## WALDOCK v. FRISCO LUMBER CO.

No. 6433—Opinion Filed Jan. 15, 1918.

Rehearing Denied Dec. 3, 1918.

(176 Pac. 218.)

(Syllabus.)

### 1. Sales — Bill of Sale — Transfer of Title.

Where personal property is from its character or situation, incapable of actual delivery, the delivery of the bill of sale, or other evidence of title, is sufficient to transfer the property and possession to the vendee.

### 2. Trusts—Bill of Sale—Transfer of Title.

Where W. purchased growing timber with the funds and for the use and benefit of his employer, but took the bills of sale in his own name, a delivery of these bills of sale to his employer in execution of the trust, without formal assignment, transferred the property and possession to the employer for whom it was purchased.

### 3. Escrows — Delivery . — Intermediate Rights.

A deed, or contract, conveying title to property, delivered in escrow, does not relate back to the time of its execution and depositing as against purchasers of the property without notice. . Intermediate rights are valid against the second delivery.

Error from District Court, McCurtain County; Summers Hardy; Judge.

Action for injunction by the Frisco Lumber Company against A. J. Waldock, with cross-petition by defendant for injunction. Judgment against defendant on the cross-petition, and he brings error. Affirmed.

McPherren & Cochran, for plaintiff in error.

John Cocke, John M. Willis, and Ames, Chambers, Lowe & Richardson, for defendant in error.

H. M. Kirkpatrick and J. S. Kirkpatrick, amici curiae.

OWEN, J. This is an action for injunction, brought by the Frisco Lumber Company in the district court of McCurtain county, against A. J. Waldock and the Good Pine Lumber Company, alleging ownership of timber on certain tracts of land in the Choctaw Nation, and praying an injunction to restrain the defendants from entering upon, cutting, or removing the timber. or in any manner interfering with the plaintiff's right to same.

The defendant Waldock filed a general denial and cross-petition alleging that he was the owner of the timber; that plaintiff had secured contracts from allottees of the land on which the timber was growing for the purpose of clouding his title and affording a pretense for the institution of various actions at law and in equity to harass and interfere with his rights to said timber and to prevent his marketing the same; and that since the institution of this suit plaintiff had cut and removed some of the timber. He prayed an injunction restraining plaintiff from cutting the timber, or in any manner interfering with his rights to the same, and for a cancellation of all the contracts held by plaintiff. To this cross-petition plaintiff filed a reply in the form of a general denial. The case was tried upon the cross-petition and reply, plaintiff having dismissed its petition. This appeal is prosecuted by Waldock to reverse the judgment of the trial court denying his right to recover as to ten of the tracts of timber, referred to by number and name of the allottee, as follows:

No. 4 Daniel Jefferson. No. 7 Nelson Kemp. No. 12 Phillis Thompson. No. 18 Allington King. No. 20. Samuel M. Kinney. No. 21, Lina King. No. 22, Wilkin Billy. No. 29 Joe Thompson. No. 30 Sina Hall. No. 32 Ben Going.

The facts as found by the referee before whom the testimony was taken, which finding was confirmed by the trial court, and about which there appears to be no controversy, were as follows:

Waldock during the year 1904 secured timber contracts, or bills of sale, covering some 39 tracts of timber originally involved in this case, but only 10 of which are involved in this appeal. These contracts were taken in Waldock's name, but it is conceded the Kansas City-Choctaw Timber Company furnished the money to procure the same, and they were taken for the use and benefit of the company. The contracts affecting the 10 tracts in question were delivered to the timber company by Waldock, but not formally assigned. After the delivery of these contracts to the timber company, some question having arisen as to their validity on account of being indefinite as to the time in which the timber was to be removed. Abbott and White, acting for the timber company, took contracts in 1905 from the allot-

tees covering these tracts. In 1907 Waldock entered into a written contract to purchase the stock and certain assets of the Kansas City-Choctaw Timber Company, including these contracts taken by Abbott and White. An assignment of these contracts, except as to tract No. 32, was executed and deposited in escrow to be delivered to Waldock on his performing the conditions imposed by the escrow agreement. But this assignment was not delivered to Waldock until 1909, and then in accordance with the judgment of the district court of Oklahoma county, in an action of interpleader brought by the depository to determine to whom the assignments should be delivered.

The Frisco Lumber Company in 1908, and while the assignment of these timber contracts to Waldock was in escrow, purchased by proper conveyances all of the rights and title claimed by the Kansas City-Choctaw Timber Company and Abbott and White to the 10 tracts in question. Tract No. 32, Ben Going, was included in the contracts taken by Waldock in 1904, and in the contracts taken by Abbott and White in 1905, but does not appear to have been included in the assignment deposited in escrow.

It is urged that the trial court erred, upon this state of facts, in denying Waldock the relief prayed as it affects the ten tracts of timber in question. It is conceded that Waldock's contracts taken in 1904 were taken for the use and benefit of the Kansas City-Choctaw Timber Company, and that under these contracts he took the title in trust for the timber company. It is contended that, notwithstanding this trust relation, the legal title remained in him for the reason that he did not formally assign the contracts, and that this title was sufficient to support this action. With this contention we do not agree.

The effect of the bills of sale, or the timber contracts, taken by Waldock from the allottees, for the purpose of this case, must be treated as a severance of the timber from the land, and the timber considered as personal property. These bills of sale operated to transfer the title and constructive possession of the timber to Waldock. Where personal property is, from its character and situation, incapable of actual delivery, delivery of the bill of sale, or evidence of title, is sufficient to transfer the property and possession. 35 Cyc. 319; Gibson v. Stevens, 8 How. 384, 12 L. Ed. 1123. At that time he was acting as the agent of the timber company, and took the title and constructive possession in trust and for the use and benefit of his principal. His constructive possession was the possession of his principal. Masters v. Teller, 7 Okla. 668, 56 Pac. 1067.

A delivery of the contracts by Waldock to the timber company amounted to an equitable assignment of the contracts. In such circumstances, there is an implied equitable assignment of the contracts and all rights thereunder. 2 R. C. L. p. 626; Frost v. Witter, 132 Cal. 421, 64 Pac. 705, 84 Am. St. Rep. 53. The delivery of these bills of sale by Waldock to the timber company was in execution of the trust, and by operation of law amounted to an equitable assignment of the contracts and a delivery of constructive possession to the equitable owner. In the case of Combs v. Brown, 29 N. J. Law, 36, it was held that a surrender of the trust, and a conveyance thereof by the trustee, may be presumed when the object of the trust has been accomplished. In the case of Mitchell v. Mitchell, 35 Miss. 108, it was held that after the purpose of a trust has ceased, or been accomplished, the trust no longer continues; and the cestui que trust may maintain an action at law for the trust property, without any formal conveyance of the legal title by the trustee. In the case of Gibson v. Stevens, supra, one of the questions at issue was whether a delivery of warehouse receipts, without formal assignment, passed the title and possession of certain barrels of pork and flour held in the warehouse. There it was said:

"In the opinion of the court, it transferred to him the legal title and constructive possession of the property. * * * The delivery of the evidences of title and the orders indorsed upon them was equivalent, in the then situation of the property, to the delivery of the property itself. * * * The rule is not confined to the usages of any particular commerce, but applies to every case where the thing sold is, from its character or situation at the time, incapable of actual delivery. * * * It is true there is no formal assignment indorsed on the warehouse document. But the technical rules of common-law conveyances and transfers of property have never been applied to mercantile contracts made in the usual course of and forms of business. The indorsement of the delivery order upon these evidences of his title, like the indorsements upon the bill of lading, sufficiently manifests the intention of the parties that the title and possession should pass. * * * And when that intention is evident from the language of the written instruments and the nature and character of the contract, it is the duty of the court to carry it into execution without embarrassing it with needless

formalities. A contrary rule would most commonly defeat the object which both parties designed to accomplish, and believed they had accomplished, by the instruments they executed."

That Waldock, as well as the persons acting for. the Kansas City-Choctaw Timber Company, understood that delivering these contracts to the timber company operated as a delivery of possession of the timber, and that he was not claiming anything under these contracts, is evidenced by his entering into the escrow agreement in 1907; by the terms of which he was to pay a substantial consideration for certain assets of this timber company, including an assignment of the contracts taken by Abbott and White in 1905. Then during the year 1909 he secured additional contracts from allottees, without reference to the contracts taken in his own name in 1904, but expressly ratifying and confirming the contracts taken by Abbott and White in 1905 covered by the assignment. From this we must conclude that he considered the contracts of 1904 of no effect, and was claiming under the contracts taken by Abbott and White in 1905 and assigned to him.

It is urged that the judgment in the interpleader action, in determining that Waldock was entitled to the documents in escrow, gave effect to the assignment and determined his right to the timber under the contracts assigned. It must be remembered that the Frisco Lumber Company was not a party to that escrow agreement, and it was not contended on the trial that this company had any knowledge or notice of the assignment, or was chargeable with such notice. Neither was this company a party to that action. As we view it. the judgment in that action amounted to no more than a 'determination' that Waldock was entitled to have the documents held by the depositary delivered to him. This availed him nothing in this action against the Frisco Lumber Company. This company derived its title from the Kansas City-Choctaw Timber Company in 1908, prior to the judgment for delivery of the escrow assignment. To sustain any title claimed by virtue of the assignment in escrow, Waldock had the burden to show that the Frisco Lumber Company had knowledge of his claim under the assignment; there being no contention that this assignment was placed of record prior to its delivery from the depositary in 1909. Cooper v. Flesner, 24 Okla. 47, 103 Pac. 1016, 23 L. R. A. (N. S.) 1180, 20 Ann. Cas. 29.

The title to this timber held by the Kansas City-Choctaw Timber Company did not pass to Waldock by placing the assignments in escrow. This was not a delivery of the assignment to Waldock and did not constitute a delivery of constructive possession of the timber. It is not contended that Waldock was in the actual possession so as to charge the Frisco Lumber Company with notice. On the contrary, Waldock alleged in his cross-petition that the land was unimproved and unoccupied. A deed or contract left in escrow is sometimes held to relate back so as to take effect at the time of execution as between the parties, where it is necessary for the purpose of avoiding the difficulty of incapacity of the grantor, or his death, occurring before the deed is to be delivered by the depositary. It does not relate back to the time of its execution and depositing as against the purchasers without notice. Intermediate rights are valid against the second delivery. This being true the grantor may in the meantime make a valid conveyance of the property, and a purchaser for value in good faith will obtain a title which will prevail as against the grantee in the deed or contract held in escrow. McMurtrey v. Bridges, 41 Okla. 264, 137 Pac. 721; 10 R. C. L. p. 641; Calhoun Co. v. Emigrant Co., 93 U. S. 124, 23 L. Ed. 826; Taft v Taft, 59 Mich. 185, 26 N. W. 426, 60 Am. Rep. 291; Jackson v. Rowland, 6 Wend. (N. Y.) 666, 22 Am. Dec. 557; May v. Emerson, 52 Or. 262, 96 Pac. 454, 1065, 16 Ann. Cas. 1129.

The judgment of the lower court in denying the petition as it affects the 10 tracts of land involved in this appeal is affirmed.

All the Justices concur, except HARDY, J., being disqualified, not participating.