Day, J.,
 

 concurring. My reasons for concurring in this judgment are as follows: The paramount question in this case is whether the property in
 
 *143
 
 question comes within the purview of Section 5353, General Code, and Section 2, Article XII of the Constitution of Ohio, as property belonging to an institution, used exclusively for charitable purposes, and hence exempt from taxation.
 

 Whether a particular piece of property is exempt from taxation depends altogether on the constitutional and statutory provisions in force at such time, for it may be regarded as a general rule that all property is liable to taxation except such as is exempted by constitutional or statutory enactment. We are not unmindful of the rule that statutes of exemption are to be strictly construed, and doubtful considerations are to be resolved against the exemption. “All laws exempting any of the property in the state from taxation, being in derogation of equal rights, should be construed strictly.”
 
 Cincinnati College
 
 v.
 
 State,
 
 19 Ohio, 110;
 
 Watterson
 
 v.
 
 Holliday, Auditor, et al.,
 
 77 Ohio St., 150, 82 N. E., 962, 11 Ann. Cas., 1096. However, they should not receive an interpretation so narrow and literal as to defeat the legislative intent to encourage, foster, and protect institutions used exclusively for charitable purposes. The proposition is fairly stated in
 
 Y. M. C. A.
 
 v.
 
 Lancaster County,
 
 106 Neb., 105, 182 N. W., 593, 34 A. L. R., 1060: “The theory that the rule requiring strict construction of a tax exemption statute demands that the narrowest possible meaning should be given to words descriptive of the objects of it would establish too severe a standard. Rather ought it to be the rule that such words as ‘charitable’ should be given a fair and reasonable interpretation, neither too broad nor too narrow, in ascertaining the true intent as to the objects of ex-
 
 *144
 
 eruption, and then that the statute should be strictly applied and enforced in order not unduly to extend its scope. The rule does not call for a strained construction, adverse to the real intention, but the judicial interpretation of such a statute should always be reasonable.” See, also, Zollmann’s American Law of Charities, Section 690, page 463, where it is said:
 

 “Courts certainly are not at liberty to defeat the legislative intent by a strict construction merely because they consider that the law is improper, for if they did, its meaning would depend, not upon its words, but upon the varying opinion of the various courts concerning its propriety, thus losing sight of the judicial duty of discovering the purpose of the lawmakers as declared, and faithfully to apply it. Certainly, the language of the legislature, in exempting from taxation, is as much entitled to obedience as that imposing taxation. Nor need the attention be exclusively riveted on the language. ‘The aphorism that exemptions are to be strictly construed is consistent with that reasonable construction that embraces incidents purely within the spirit, if not the terms, of the.exception.’ ”
 

 The demurrer filed herein concedes all facts well pleaded, and we may therefore assume the following facts to be true: (1) The record title is in the Welfare Federation; (2) the Welfare Federation is a charitable institution; (3) the property in question is being actually used exclusively for charitable purposes; and (4) no effort was made to reverse, vacate, or modify the findings of the tax commission, pursuant to Section 5611-2, General Code.
 

 The history of constitutional provision and statu
 
 *145
 
 tory enactment relative to exemption of property devoted to charitable purposes is set forth in
 
 Myers, Treas.,
 
 v.
 
 Benjamin Rose Institute,
 
 92 Ohio St., 238, 110 N. E., 929, and
 
 Benjamin Rose Institute
 
 v.
 
 Myers, Treas.,
 
 92 Ohio St., 252, 110 N. E., 924, L. R. A., 1916D, 1170, and it is unnecessary to again trace their history or repeat the citation of cases of this court relative thereto. It will be sufficient to refer to Section 2, Article XII, of the Constitution, which provides: “Laws shall be passed, taxing by a uniform rule, * * * all real and personal property; * * * but * * * institutions used exclusively for charitable purposes * * * may, by general laws, be exempted from taxation.”
 

 In 1923 (110 Ohio Laws, 77) the Legislature amended Section 5353, General Code, to read, “And property belonging to institutions used exclusively for charitable purposes shall be exempt from taxation,” whereas the language prior thereto (103 Ohio Laws, 548) was: “Lands, * * * used exclusively for the accommodation or support of the poor, * * * and property belonging to institutions of public charity only, shall be exempt from taxation.”
 

 The writer is of opinion that, by the provisions of the foregoing statute and of the Constitution, ownership and use for charitable purposes must coincide. However, it is argued that full ownership of the property by an institution of public charity is no longer necessary for exemption-from taxation if the property is being used exclusively for charitable purposes. It is said, in the opinion in
 
 Jones, Treas.,
 
 v.
 
 Conn et al., Trustees,
 
 116 Ohio St., 1, at page 10, 155 N. E., 791, 793:
 

 “This amendment no doubt did, as defendants in
 
 *146
 
 error contend, enable the Legislature to exempt from taxation the property of institutions of charity not purely public, * * * but it also emphasized the use of the property, and changed the emphasis from the ownership thereof to the manner of its use. * * * Hence it is the use of the property and not the ownership which decides the question, and the exemption must depend upon its actual and exclusive devotion to the work of the institution.”
 

 This language, however, should be construed in the light of the facts of that case which show that ownership was conceded, the use being the only question involved.
 

 We are disposed to the conclusion that the expression of the statute, “property belonging to institutions,” does not mean the absolute ownership thereof - by the institution in the highest degree known to the law, but means that if there is legal title in the institution, and it has complete dominion, control and power over, and exclusive use thereof, for charitable purposes, such is a sufficient ownership to comply with the law.
 

 Citation of authorities from other states is not particularly helpful, in view of the fact that the exemption must depend upon the words of the statutes and constitutional provisions of the respective states. There are many jurisdictions where the use is the measure of the right to exemption:
 
 City of Louisville
 
 v.
 
 Werne,
 
 25 Ky. Law Rep., 2196, 80 S. W., 224;
 
 Scott
 
 v.
 
 Society of Russian
 
 Israelites, 59 Neb., 571, 81 N. W., 624;
 
 People, ex rel. Bracher,
 
 v.
 
 Salvation Army,
 
 305 Ill., 545, 137 N. E., 430. These cases all hold that the charitable use requires the exemption. Many other citations might be given to
 
 *147
 
 the same effect, but they are not helpful for the reason above indicated, to wit, that in this state ownership and use must coincide. The crucial question then must be: What kind of ownership is included in the statute under consideration in the words “property belonging to institutions used exclusively for charitable purposes?” The words “belonging to” do not import so high a degree of title as the words “owned by,” yet the term is often used in the sense of ownership. In this state it has been recognized that one may be the
 
 owner
 
 of property, within the provision of a statute, and yet not be possessed of the entire title; that there may be a qualified ownership, and one still be the
 
 owner
 
 within the meaning of the law. This was recognized and discussed in
 
 Iroquois Co.
 
 v.
 
 Meyer,
 
 80 Ohio St., 676, 89 N. E., 90. Attention may be directed to the language of Spear, J., on pages 683, 684, 685 (89 N. E., 91).
 

 It is conceded that the legal title to this property is in the Welfare Federation, and that it is in actual possession thereof and using it for purely charitable purposes. The fact that such institution has placed in escrow with a trust company a deed to such property does not signify that the grantor in such deed has parted with the legal title thereto. Until such deed has been delivered to the grantee by the escrow agent, the legal title rests in the grantor and he is still the owner in contemplation of law. As stated by Justice Clifford in
 
 County of Calhoun
 
 v.
 
 American Emigrant Co.,
 
 93 U. S., 124, at page 127 (23 L. Ed., 826): “The rule is established by repeated decisions, that, where a deed is delivered as an escrow, nothing passes by the deed unless the condition is
 
 *148
 
 performed.” See, also, 21 Corpus Juris, 882, Section 28; 10 Ruling Case Law, 627, Section 10.
 

 If taxes may be legally assessed, they would be assessed against such owner of the legal title. In our opinion, such property “belongs” to the Welfare Federation until the delivery of the deed by the escrow agent. Of course, immediately upon delivery the title passes. In the case at bar, whenever. the deed held by the Union Trust Company in escrow shall be delivered to Orlando Hall, or his heirs or assigns, or such property is no longer used exclusively for charitable purposes, in either event, the exemption ceases and the property is subject to taxation the same as any other property.
 

 The writer and those concurring in this, view are therefore of the opinion that the provision “property belonging to institutions” does not require the highest ownership known to the law, but that it is sufficient if the legal title to the property in question is in the institution; that such institution is in possession thereof and has control and dominion there-over; that the property is in the power of the institution which is using the same exclusively for charitable purposes; and that under such circumstances the property in question “belongs” to the institution. It therefore follows that the order of the tax commission ordering the exemption was right, and that the court of common pleas, in taking that view of the case, reached the right conclusion in sustaining the demurrer to the amended petition.
 

 Kinkade and Jones, JJ., concur in the foregoing concurring opinion.