## METROPOLITAN ICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 53936, 69525. Promulgated May 10, 1935.

*Ralph E. Tibbetts, Esq.*, for the petitioner.
*Hartford Allen, Esq.*, for the respondent.

OPINION.

BLACK: What is the statutory basis to petitioner, for the purposes of computing depreciation and gain or loss, of the assets which it acquired at the time of its organization in 1923? Petitioner contends it is " cost " to it. Respondent contends that under the facts stated the basis is the same as it would be in the hands of the several transferors.

The applicable statutory provisions are section 204 (a)(7) and (c) of the Revenue Act of 1926 and sections 114 (a) and 113 (a)(7) of the Revenue Act of 1928. These provisions of both acts are substantially alike. Those of the 1928 Act read as follows:

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) *Basis for depreciation.*—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property.

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*         \*         \*         \*         \*         \*         \*

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor \* \* \*.

It is clear from the above provisions that petitioner's contention must be sustained, unless paragraph (7), *supra*, applies, in which event the decision would be for the respondent.

Both parties to these proceedings agree that there was a statutory reorganization within the meaning of section 203 (h)(1)(A) of the Revenue Act of 1926 and section 112 (i)(1)(A) of the Revenue Act of 1928. The question as to whether or not under a given state of facts there has been a statutory reorganization is a question of law for the Board to determine and we are not bound by the agreement of the parties on that issue of law. Cf. *Nelson* v. *Commissioner*, 75 Fed. (2d) 696, affirming 28 B. T. A. 529. As we view the transaction, however, it is unnecessary to determine whether a statutory reorganization was affected. The additional limitation that a control of the transferred property of 80 per centum or more remain in the same persons or any of them is also necessary in order that the basis shall be the same as in the hands of the transferor. The interest or control referred to in section 113 (a)(7), Revenue Act of 1928, which we have quoted above, means beneficial ownership. Sec-

tion 204 (a) (7), Revenue Act of 1926 is the same. Cf. *Federal Grain Corporation*, 18 B. T. A. 242.

It is our opinion in the instant case that "immediately after the transfer" the stockholders of the old corporations owned only the common stock of petitioner and did not own any of its preferred stock, which had equal voting rights with the common stock. The common stock amounted to only 66⅔ percent of the total stock issued, which, of course, is less than the 80 percent provided for in the statute. It is our opinion that "immediately after the transfer" petitioner's preferred stock was owned by Parker & Co. It was issued to Parker & Co. and voted by Parker & Co. It was placed in the hands of the escrow agent solely for the protection of the old stockholders, who were to receive the proceeds from the sale to Parker & Co. The old stockholders may have had and probably did have an equitable lien on both the preferred stock and the bonds and their proceeds, to secure the part of the purchase price which was to be paid them in cash. It was not intended, however, that they should own the bonds and preferred stock except in case of default of Parker & Co. to carry out its part of the agreement. Parker & Co. had agreed to pay $1,800,000 for the preferred stock and bonds— $270,000 on or before January 21, 1924, and $180,000 on or before the 21st of each month thereafter "until the time when all said bonds and stock are paid for * * *." Of course, Parker & Co. was selling the preferred stock and bonds to the public at par and had planned on realizing for itself a profit of $200,000 on the deal. The fact that the stock was not paid for immediately by Parker & Co. would not detract from their ownership of it "immediately after the transfer" if that was, as we think it was, the intention of the parties. There was a condition that if Parker & Co. should fail to pay for the preferred stock within the specified time, the shares still in the possession of the escrow agent would be delivered to the old stockholders. But this condition never arose. Parker & Co. met each installment in accordance with its agreement, the last payment in full being made on October 17, 1924. Under these conditions we think there would be no basis to hold that the 10,000 shares of preferred stock issued the same day as the 20,000 shares of common stock were owned by the stockholders of the old corporation. Cf. *H. L. Newman Co.*, 16 B. T. A. 533; *Ground Gripper Shoe Co.*, 21 B. T. A. 646; affirmed on another point at 62 Fed. (2d) 654; *Leffingwell Rancho Co.*, 22 B. T. A. 1303, and *Hazeltine Corporation*, 32 B. T. A. 4. In each of these cases the facts show that the new stock, the ownership of which immediately after the transfer was there in question, was first actually issued by the new corporation to the old stockholders, but because the old stockholders were, at the time of receipt of the new shares, under contractual obligation to

sell a substantial block of such new shares to outsiders, we held that immediately after the transfer such block of stock could not be considered as owned by the stockholders of the old corporation or corporations, and, that, therefore, an interest or control in the property transferred did not remain in the same persons or any of them. In the instant case the preferred stock was never issued, even for a brief period of time, to the old stockholders. It was issued to C. D. Parker & Co., the investment bankers, who subsequently sold it to the general public. When the transactions were all completed the old stockholders owned 20,000 shares of the common stock and 2,842 shares of the preferred stock, representing an investment of something more than $1,000,000, and the general public had purchased all the bonds and the remainder of the preferred stock, having voting rights equal to the common stock, representing an investment of nearly $2,000,000. In this sort of a situation it seems clear that the statute intends that the corporation receiving the assets shall get a new basis, based on cost.

We are therefore of the opinion and so hold that immediately after the transfer of the properties of the old corporation to petitioner an interest or control in such properties of *less* than 80 per centum remained in the same persons or any of them, and that the basis to petitioner is the " cost " to it of the properties acquired. Cf. *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77; *Charles Hall*, 31 B. T. A. 125; *Spang, Chalfant & Co.*, 31 B. T. A. 721.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

SMITH, dissenting: The question presented by these proceedings is whether the petitioner is entitled to a stepped-up basis in computing depreciation allowances and profit or loss on the sale of assets acquired. The petitioner is not entitled to such stepped-up basis provided it acquired the assets in question in connection with a reorganization and immediately thereafter an interest or control in such property of 80 per centum or more remained in the same persons as before. The parties have stipulated that the assets were acquired by the petitioner in connection with a reorganization. This means that the former owners were not subjected to income tax in respect of any profits accruing to them as a result of the transfer. The real question then is whether *immediately after the transfer* an interest or control in the property of 80 per centum or more remained in the same persons or any of them.

The law is well settled that until the performance of a condition laid down in an escrow agreement, the legal title to the escrowed property remains in the grantor. *County of Calhoun* v. *American Emigrant Co.*, 93 U. S. 124. The escrowed property in the proceed-

ings at bar consisted of the bonds and of all the shares of stock of the petitioner corporation. Who was the owner of those bonds and shares while held by the escrow agent? Manifestly, it was not Parker & Co. Under the terms of the escrow agreement Parker & Co. was not to become the owner of any of them until it deposited cash with the escrow agent for their purchase and it was under no binding obligation to make such deposit. If Parker & Co. did not purchase them they were eventually to be turned back to the former stockholders of the consolidating companies. The real owners therefor were such stockholders.

I do not think that the words "immediately after the transfer" refer to a time long after the petitioner corporation acquired the assets. The principle invoked by the court and by the Board in *West Texas Refining & Development Co.* v. *Commissioner*, 68 Fed. (2d) 77; *Charles Hall*, 31 B. T. A. 125; and *Spang Chalfant & Co.*, 31 B. T. A. 721, is not applicable here. The principle which is applicable is that invoked in *Monarch Electric & Wire Co.* v. *Commissioner*, 38 Fed. (2d) 417, affirming 12 B. T. A. 158; and *Durand-McNeil-Horner Co.*, 30 B. T. A. 769. In my opinion the petitioner is not entitled to compute depreciation and profit or loss on the sale of the assets upon a stepped-up basis.