MERCHANTS & FARMERS STATE BANK OF GROVE CITY, BY J. N. PEYTON, v. MELFORD OLSON AND ANOTHER.[1]

October 6, 1933.

No. 29,528.

[1]Reported in 250 N. W. 366.

*Victor E. Anderson, Samuel G. Gandrud,* and *F. C. Anderson,* for appellants.

*D. F. Nordstrom* and *C. A. Fosnes,* for respondent.

*LORING, Justice.*

In an action to determine adverse claims, the court made findings in favor of the plaintiff, and the defendants have appealed from a judgment entered after an order denying their motion for a new trial.

Both the bank and the defendant Melford Olson claim title to the land in controversy from Mads Olson, grandfather of Melford. The bank claims through a deed from Mads to his son Edwin, Melford's father, and one of these defendants, who lost whatever interest he may have had to the bank by foreclosure. Melford claims by devise from his grandfather. Edwin by his answer disclaims all interest in the property.

November 17, 1904, Mads Olson, who was then the owner of the land in controversy, entered into a contract with Edwin to convey to him this and other land, together with some personal property, upon the payment by Edwin of an agreed rental of $450 a year during Mads' lifetime and certain specified debts owed by Mads aggregating $3,150 and the performance of a contract for support and maintenance. The contract referred to these obligations as follows:

"It is agreed and understood that until the second party has paid all the above specified indebtedness, and until the death of the first party has faithfully kept and observed all the conditions of this agreement, then and not until then shall he have a conveyance of the above described 80 acres of land to him; and for the purpose of carrying out this agreement on the part of the first party he has executed a warranty deed of said lands to the second party and delivered the same in escrow in the hands of B. Bresden of Grove City, Minnesota, to be delivered to the second party immediately after the death of the first party, if all the conditions of this agreement have been fulfilled and kept by the second party; but if the said second

party fails to fulfill all his said agreements, but defaults in the same or any part thereof, then said deed so left in escrow shall be null and void and shall not be delivered to him."

A deed was executed by Mads Olson to Edwin Olson and placed in escrow with B. Bresden, a business man of Grove City, Minnesota, who was at the time the president of the plaintiff bank. It is claimed by Melford that Edwin never paid any rent and that he farmed the land under the contract of 1904 for the three following years only; that thereafter the contract was abandoned and abrogated by mutual consent; and that Mads in 1908 resumed the farming of the land and paid all the obligations which Edwin had by the contract promised to pay. However, if this was done, the parties to the contract neglected to obtain a return to Mads of the deed held by the escrow holder. In August, 1910, Mads made a will which left the land in controversy to Melford, who was then a child three years of age. It is also contended by Melford that in March, 1913, shortly before Mads died, he leased the land in controversy, together with other land, to the defendant Edwin Olson, for two years, cash rental to be paid to the plaintiff bank in settlement of an obligation of Mads. Melford offered to prove that this lease was prepared and witnessed by the cashier and managing officer of the bank and that he took the acknowledgment. The trial court ruled out all of the evidence offered to prove the failure of Edwin to perform his contract and its subsequent abandonment and abrogation, as well as all evidence tending to show that the bank had knowledge or notice thereof.

Mads Olson died in March, 1913, and in March, 1914, the deed which had been made out to Edwin and placed with Bresden ten years before was recorded and sent to Edwin, but not at his request as far as the record shows.

January 22, 1925, the bank prevailed upon Edwin to give it a mortgage on the land involved to secure an indebtedness which Edwin already owed it. This mortgage was foreclosed in 1930, and the bank claims title by virtue of such foreclosure. It also claims to have made a farm contract or lease with Melford and a Nels

Olson covering this land. This contract was not in evidence, and its terms are not in the record. Thereafter, in 1931, Melford, having learned of the devise to him, sought and obtained an amended decree in the proceedings by which his grandfather's will had been probated. The original decree had omitted this land for the reason that the court was informed that Mads had deeded the same to Edwin. The amended decree following the terms of the will gave Melford whatever interest his grandfather had in the land.

By its reply the plaintiff set up the contract of 1904 and alleged that Edwin had performed all of the conditions thereof and that the deed had then been delivered upon the death of Mads.

■ Where an instrument placed in escrow is delivered by the escrow holder either in violation of or without compliance with the terms or conditions of the escrow agreement, no title passes by virtue of such delivery, because in legal contemplation it is not effectual delivery and the grantee thereunder obtains no more right than he would have in the possession of a forged or stolen instrument. Henry v. Hutchins, 146 Minn. 381, 178 N. W. 807; Bergstrom v. Pickett, 148 Minn. 224, 181 N. W. 343; Knapp v. Nelson, 41 Colo. 447, 92 P. 912; Evans v. McKinney, 308 Ill. 100, 139 N. E. 99, 106. The obtaining of the delivery of the deed so held in escrow by any means short of performance of the conditions of the escrow is against the assent of the grantor; and, since this assent is essential to the delivery and the delivery essential to the validity of the deed, no title passes. Everts v. Agnes, 4 Wis. 343, 65 Am. D. 314, 318; Daggett v. Daggett, 143 Mass. 516, 10 N. E. 311; County of Calhoun v. American Emigrant Co. 93 U. S. 124, 23 L. ed. 826; Los Angeles C. H. S. Dist. v. Quinn, 195 Cal. 377, 234 P. 313; Weghorst v. Clark, 66 Colo. 535, 180 P. 742; Coe v. Turner, 5 Conn. 86; Evans v. McKinney, 308 Ill. 100, 139 N. E. 99. If no title passes to the grantee named in the deed, then, of course, he can pass nothing on to an innocent subvendee. Balfour v. Hopkins, 35 C. C. A. 445, 93 F. 564; Fearing v. Clark, 16 Gray, 74, 76, 77 Am. D. 394; Provident L. & T. Co. v. Mercer County, 170 U. S. 593, 604, 18 S. Ct. 788, 42 L. ed. 1156; 1 Devlin, Deeds (3 ed.) § 322. In so far as

Murray v. Foskett, 114 Minn. 44, 130 N. W. 14, indicates a different rule, it is hereby overruled.

■■■ It is contended in the case at bar that not only did Edwin fail to perform the conditions of the escrow but that there was a total abandonment and abrogation of the contract under the terms of which the deed was placed in escrow. The parties had a perfect right to abandon the contract; and, if they did so and if Mads resumed possession and operation of the farm, competent evidence tending to prove such fact was admissible and should have been received. The plaintiff pleaded the existence of this contract of 1904 and alleged full compliance therewith by Edwin, so that there is no question of waiver on the part of Mads of any of the conditions of the contract.

· ■■■ It is true that a grantor whose deed has been wrongfully delivered may under some circumstances be estopped as against his grantee or subvendee from setting up the wrongful delivery of the deed; but in the case at bar Melford proposed to prove that the contract of 1904 was recorded and consequently was notice to the plaintiff of its conditions. The defendant sought also to prove noncompliance with those conditions to the knowledge of the bank and, further, that just prior to his death Mads exercised dominion over the property and for the benefit of the bank made a lease to Edwin for a period of two years, the cash rental from which was paid to the bank. To us it seems that the making of this lease, drafted, as it was claimed, by an officer of the bank who witnessed it and took the acknowledgment of the parties thereto, was persuasive evidence of knowledge on the part of the bank that Mads had resumed all his proprietary interest in the property. Inasmuch as Edwin was the lessee in this instrument, it was a recognition by him of such resumption on the part of Mads. The bank's knowledge of the situation would prevent it from asserting an estoppel.

■ Plaintiff contends that the deed having been recorded and found in the hands of Edwin a presumption of rightful delivery followed. While the possession by the bank of the deed from Mads to Edwin placed the burden on Melford of going forward with the

proof of wrongful delivery, it did no more than that. Any presumption which might obtain on account of such possession was not conclusive.

It follows that if Melford can prove what he proposes to prove, the deed was wrongfully delivered and carries no title and there are no superior equities on the side of the bank which estop Melford from establishing the wrongful delivery and consequent nonpassage of title.

■ It is also asserted by the plaintiff that Melford, by his lease from the bank, is estopped to question the bank's title. This is an action to determine adverse claims, and the relief sought does not include possession. That being the case, the ordinary rule which estops a tenant from denying his landlord's title does not apply. Beeler v. Elwell, 92 Kan. 586, 141 P. 551; DeCoursey v. DeCoursey, 23 Ky. L. Rep. 1199, 64 S. W. 912; Smith v. Babcock, 36 N. Y. 167, 93 Am. D. 498. This doctrine appears to have been applied to cases where possession was sought but where also the title to the premises is put in issue. McKie v. Anderson, 78 Tex. 207, 14 S. W. 576. The reason for this rule is well expressed by the supreme court of Michigan in the case of Jochen v. Tibbells, 50 Mich. 33, 36, 14 N. W. 690, 691:

"Where the landlord seeks to recover the possession he can do so under the lease; but if he goes farther and claims the premises in fee, the tenant is not estopped from denying any right claimed by the plaintiff farther or greater than that of possession. This fully protects the landlord, who regains his possession, and the tenant having gained no advantage by taking a lease, the parties then are in proper position to litigate the title should they desire so to do. If the plaintiff's position is correct, a judgment in fee may be obtained by estoppel against the tenant, and thus the landlord has acquired an advantage which he would not be entitled to."

See also Steele v. Bond, 28 Minn. 267, 274, 9 N. W. 772.

■ Both parties claim some right on account of the decrees of the probate court. Obviously that court has no jurisdiction to determine the title between the heirs and strangers to the proceedings.

State ex rel. Williams v. Probate Court, 140 Minn. 342, 168 N. W. 14; Odenbreit v. Utheim, 131 Minn. 56, 154 N. W. 741, L. R. A. 1916D, 421.

■ We come now to the exclusion of evidence offered to show declarations of Mads to some of his neighbors to the effect that the contract of 1904 had been abandoned and that he had resumed possession and control of the premises. We think these declarations were properly excluded. They were in no sense against the interest of Mads; and, although he was privy to the title now claimed by the plaintiff, we do not think these declarations came within any of the recognized exceptions to the hearsay rule. 3 Wigmore, Ev. (2 ed.) § 1780; Paine v. Crane, 112 Minn. 439, 128 N. W. 574. It is true that they were objected to only on the ground of immateriality, but if the court rightly ruled them out for the wrong reason it was not error. Paine v. Crane, 112 Minn. 439, 128 N. W. 574.

■ In our opinion the objections to the testimony of Edwin, where he proposed to testify to his noncompliance with the contract of 1904, were erroneously sustained. It is true that by his covenants in the mortgage, if they were rightly obtained, he was estopped from framing an issue questioning the title of his mortgagee or his mortgagee's successors; but on an issue between his mortgagee and others he would not be precluded from testifying to facts, the effect of which might be to support a claim in contradiction of his mortgagee's title.

In view of the disposition which we make of the case, it is not necessary to pass upon the remarks to which objection is taken in assignment 34. They will probably not occur in a new trial.

Judgment is reversed and a new trial ordered.