94 P.2d 508

**SANDOVAL COUNTY BOARD OF EDUCATION v. YOUNG.**

**No. 4450.**

Supreme Court of New Mexico.

Aug. 28, 1939.

Rehearing Denied Oct. 20, 1939.

Milton S. Seligman, of Albuquerque, for appellant.

M. J. McGuinness, of Albuquerque, for appellee.

BRICE, Justice.

Plaintiff (appellant here) instituted this action in ejectment to recover possession of a tract of land described in the deed conveying it, dated May 31, 1911, as follows: "Situated and being in District No. 20, Cuba, N. M., in the County of Sandoval and Territory of New Mexico, to-wit: Bounded on the north by land of Ursola Segura, on the east by land of Celso Sandoval, on the south by the public road and on the west by a public road. Said portion of land being subject to the foregoing description and boundaries; its extension consisting in length from east to west one acre in legal measurements of the surveyor."

At the close of plaintiff's testimony the court sustained a motion made by defendant (appellee) to dismiss the complaint upon the ground that plaintiff had not made "a prima facie case."

Plaintiff requested the court, in writing, to make certain findings of fact, upon the margin of some of which the court marked the word "Adopted," and upon others the word "Refused." The trial court filed his decision as required by Sec. 105-813, N.M.Sts.1929; but did not include therein any finding of fact requested by plaintiff; the effect of which was a refusal to make any of plaintiff's requested findings. McDaniel v. Vaughn, 42 N.M. 422, 80 P.2d 417.

The parties agree upon the location of the east and west boundaries of the land

in suit. The location of the north boundary, which passed through Segura's land, depends upon the location of the south boundary; which, if located upon the ground, will determine the case.

As there was no public road through, or along the south side of Segura's land, it is contended by plaintiff that there is a latent ambiguity in the description of the land which authorized the introduction of parol testimony to determine the south boundary of the land in question.

The defendant's motion to dismiss the case, made at the close of the testimony, called for a declaration of law, to-wit: Considering only that part of the testimony that supported plaintiff's case, together with all favorable inferences that could be reasonably drawn· therefrom, in a light most favorable to the plaintiff—had a case been made that would support a judgment? Telman .v. Galles, 41 N.M. 56, 63 P.2d 1049.

In determining this question all of the evidence in the record and all reasonable inferences therefrom, favorable to plaintiff, must be taken as true and all unfavorable to it must be discarded. Mitchell v. Newcastle, 275 Pa. 426, 119 A. 485.

In commenting upon this rule we stated in Merchants Bank v. Dunn, 41 N.M. 432, 70 P.2d 760, 763:

"Upon demurrer to the evidence the demurrant admits as true all portions of the evidence and reasonable inferences flowing therefrom which tend to prove the allegations of the petition. * * *

"In the latter case the court does not weigh conflicting evidence. On the contrary, it disregards the conflict and such portions of the evidence as tend to weaken or disprove the issue plaintiff must sustain, and considers as true only such evidence, with its accompanying favorable inferences, as supports the material allegations."

Defendant does not question this rule, but contends that as plaintiff submitted requested findings of fact and conclusions of law after the trial court had sustained the motion to dismiss, it thereby authorized the court to weigh the testimony, as though the case had been submitted for determination upon the evidence before the court. We do not understand that such result necessarily followed plaintiff's request for specific findings of fact and conclusions of law. Sec. 105-813, N.M.Sts. 1929, is mandatory and imposes the duty upon the trial court to make findings of fact and conclusions of law, notwithstanding he may have sustained a demurrer to the evidence or motion to dismiss. Morrow v. Martinez, 27 N.M. 354, 200 P. 1071.

Defendant relies upon Bezemek v. Balduini, 28 N.M. 124, 207 P. 330, where a like question was before this court, in which we stated:

"Appellant contends that such a motion [motion for judgment] was in the nature of a demurrer to the evidence, the reser-

vation therein limiting the court at that time to pass upon the question only as to whether or not the defendant had made a prima facie case. * * *

"Under the Mandeville Case, supra [Union Bank v. Mandeville, 25 N.M. 387, 183 P. 394], we think the position of the appellant is well taken, and that such motion as was here made, although by its terms one for judgment, was in effect no more than a demurrer to the evidence, asking a ruling from the court in a matter of law as to the sufficiency of the evidence to sustain defendant's plea or defense in confession and avoidance.

"Appellant, however, cannot avail herself in this court of the erroneous action of the trial judge. She not only failed to raise the point below, and object to the action of the trial judge, but by her request for findings of fact in her favor on evidence adduced, waived any right to take advantage of such erroneous action. At no time was the point raised below that the trial court could not weigh the evidence and find the facts. The trial court refused the findings of the appellant and made those requested by the appellee. No opportunity was given the trial court to pass upon the question as to the effect of the motion for judgment which we are now considering, and the appellant raises the proposition for the first time in this court."

This court, in Morrow v. Martinez, 27 N.M. 354, 200 P. 1071, 1072, held that, notwithstanding a demurrer to the evidence or motion to dismiss may be sustained, the trial court is required to make findings of fact and conclusions of law upon request. In construing Sec. 105-813, N.M.Sts.1929, the court stated: "It is apparent that this statute imposes a duty upon the court without request to make findings of fact and conclusions of law in every case tried by the court involving questions of fact. It is a right which the successful party has to have the court make such a record as will support the judgment, and it is a right the unsuccessful party has to have the court make such a record as will enable him to review the action if he so elects. * * * Although the demurrer to the evidence may for some purposes be held to amount to an admission of the facts which it tends to establish, that admission goes only to the extent of furnishing a rule for determining what the facts in the case are. The court under such circumstances may well assume that the facts shown are true. But this principle does not reach the question at hand. The question is, What are the facts, and what legal conclusions should be drawn from them? To have the court show by the record these matters is a statutory right in all cases tried to the court, and the district court must, when properly requested, comply with the provisions of the law."

The Bezemek case does not overrule Morrow v. Martinez, supra; indeed its doctrine was in effect recognized, but from the record in the former case it appeared that appellant was a party to the error in that he knew that the trial court was weigh-

ing the testimony and did not call its attention to the fact that it was committing error. It is true the court stated, "She not only failed to raise the point below, and object to the action of the trial judge, but by her request for findings of fact in her favor on evidence adduced, waived any right to take advantage of such erroneous action," which is not very clear. She was entitled to findings of fact based upon that portion of the testimony favorable to her, together with all reasonable inferences which supported the material allegations of her complaint, and this court did not hold otherwise in the Bezemek case. The holding was that the question presented could not be raised for the first time in this court.

But here we have a different case. It was the duty of the trial court to make any relevant finding of fact requested by plaintiff that was supported by substantial evidence; that is, in making his decision upon any requested finding, he should have taken as true all portions of the testimony and all reasonable inferences flowing therefrom, which tended to prove such finding, and have disregarded all conflicts and all evidence which tended to weaken or disprove it. It may be that the court failed to follow this rule and did weigh the testimony, and that plaintiff acquiesced therein, but defendant did not call our attention to any evidence of it. He asserts that "the submission to the trial court of requested findings of fact on the evidence adduced is a waiver under the circumstances of this case, of the objection that

the court could only pass upon the legal sufficiency of appellant's evidence and could not pass upon the weight of the evidence nor make findings of fact." There are no circumstances pointed out in the defendant's brief (except the fact that requested findings of fact were tendered by plaintiff) as a basis for his contention that plaintiff had waived the court's error in weighing the testimony. Such request for findings was proper procedure and was not within itself a consent for the court to weigh the testimony; and if it appears from the record that plaintiff did submit the requested findings "on the evidence adduced," then it was defendant's duty to establish the waiver by reference to the record, which he failed to do.

That the court did not render his decision upon the assumption that the plaintiff had waived any right to an appraisal of the testimony by the district court and this court, under the general rule which follows the sustaining of a demurrer to the evidence or motion for judgment at the close of plaintiff's case, is borne out by the eighth finding of fact and the fourth conclusion of law of the court's decision, which are as follows:

"That Plaintiff did not prove, or prima facie show, title or right of possession to the lands lying south of the 'Public Road' referred to in said deed as the south boundary of the tract conveyed by said deed of May 31. 1911; and no evidence was introduced by Plaintiff, either oral or documentary, establishing a prima facie case

of actionable right in itself in or to said lands, or to prove or prima facie show, adverse possession as defined and as required by the statute."

"Plaintiff failed to make a prima facie case or establish its right to recover, and failed to meet the burden of proof exacted by law in an ejectment case so as to shift the burden or put the defendant upon his defense."

In passing upon the questions of whether the court erred in refusing to make certain requested findings, and in making his findings upon which he based his judgment, we must take as true the testimony favorable to plaintiff, with all reasonable inferences flowing therefrom, and discard all testimony that tends to weaken or disprove the plaintiff's case.

The parties agree that the court's findings Nos. 1 and 2 are correct. They are as follows:

"That plaintiff is the duly and legally constituted, qualified and acting Board of Education in and for the County of Sandoval, State of New Mexico, and that the defendant is a resident of the said county and state.

"That one Ursulo Segura, patentee of the United States of America under Private Claim #3245 in and to and the owner of certain lands situated in the County of Sandoval, New Mexico, on the 31st day of May, 1911, did sell and convey a portion thereof to the predecessors of plaintiff, described and bounded as follows:

" 'All the following described piece or parcel of land situate and being in District No. 20 Cuba, N. M., in the County of Sandoval and Territory of New Mexico, to-wit: Bounded on the North by land of Ursulo Segura, on the East by land of Celso Sandoval, on the South by a Public Road and on the West by a Public Road, said portion of land being subject to the foregoing description and boundaries, containing in area lengthwise from east to west one (1) acre of land measured as to extent by legal survey.' "

The court erroneously refused to adopt plaintiff's requested findings of fact Nos. 1, 2, 5 and 7, which are as follows:

"(1) The court finds that plaintiff was in possession of the premises described in the Complaint, by its agents or lessees, from the year 1911 until the year 1937, claiming title under a deed from one Ursulo Segura purporting to describe said premises and recorded in 1911.

"(2) The court finds that the deed from Ursulo Segura to plaintiff, executed (and dated May 31, 1911) delivered and recorded in the year 1911, is a valid deed."

"(5) The court finds that under the deed from Ursulo Segura plaintiff in the year 1911 went into possession of and exercised rights of ownership over, and has up to the time of the filing of the Complaint herein been in possession of and exercised rights of ownership over, the tract of land leased by plaintiff to defendant in 1928; that such possession and exercise

of rights of ownership were never objected to or interfered with by the grantor, Ursulo Segura, and that said Ursulo Segura has acquiesced in such possession and ownership by plaintiff under the deed from him for more than twenty years."

"(7) The court finds that, in the year 1928, defendant, as a tenant of plaintiff under a five year lease from plaintiff, went into possession of the following described tract of land in Cuba, County of Sandoval, New Mexico: 'Bounded on the north by property of John F. Young; East by Patricio Montoya; South by Earl B. Young; West by Main Highway of Cuba', upon which land was then situated a building which was formerly a schoolhouse; that the defendant remained in possession of said premises continuously from the time of entering under the lease up to and through the date of the filing of the complaint herein; that during such time defendant from time to time paid rent to plaintiff for the use of such premises and did not relinquish possession to plaintiff nor to any third party, nor was defendant's possession or occupancy as plaintiff's tenant ever interfered with or disturbed in any manner whatsoever."

The complaint stated a statutory action in ejectment to recover possession of the following described land:

"Situated and being in School District No. 20, Cuba, New Mexico, in the County of Sandoval and State of New Mexico, described in the following manner, to-wit:

"Bounded on the North by land of Ursolo Segura, on the East by land of Celso. Sandoval, on the South by the public road, and on the West by a public road;

"Said land being further described as follows: That certain parcel of land located in and being a part of Small Holding Claim No. 3245 of Sections twenty-eight and twenty-nine in Township twenty-one North of Range One West of the New Mexico Meridian, New Mexico, and more particularly described as follows: Commencing at a point on the United States Government Stone marked PCMC2, thence to a point 20 feet N. 74° 00' W., and, beginning at this point, designated as Corner # 1, thence 478 feet N. 74° 00' W. to Corner. # 2, thence 92.63 feet No. 9° 13' E. to Corner # 3, thence 478.8 feet S. 74° 00' E. to Corner # 4, thence 92.54 feet S. 9° 45' W. to Corner # 1 and the point of beginning."

It was alleged in the answer and admitted by the reply, that plaintiff and its predecessors "leased to the defendant the following lands situated in Cuba, Sandoval County, New Mexico, to-wit, bounded on the North by property of John F. Young, East by Patricio Montoya, South by Earl B. Young, West by Main Highway of Cuba, which said tract of land is included in that described in paragraph I of the complaint, said lease being for a period of five (5) years from June 1, 1928."

The evidence shows without dispute that defendant went into possession of the property under a written lease and held over and

was in possession of such property at the time of the institution of this suit and of its trial, though he alleged in a pleading that the lease terminated by mutual consent July 8, 1937 and the suit was filed October 5, 1937. The court found as a fact "that at the time of the commencement of this action, the defendant was in possession of the premises *claimed by plaintiff*."

The description by metes and bounds as set out in the complaint is that of a tract of land within the boundaries of the tract described in the lease as clearly shown by a plat of the property introduced in evidence. The undisputed testimony, including the admissions of defendant, establishes that he is holding over after the termination of a lease under which he went into possession.

The trial court did not err in refusing to adopt plaintiff's requested finding of fact No. 3, as follows: "The court finds that the deed from Ursulo Segura to plaintiff, executed, delivered and recorded in the year 1911, definitely, certainly and accurately describes the western, northern and eastern boundaries of the premises conveyed, and that said deed describes said tract as containing one acre, (and also that the southern boundary was established by the testimony of the surveyor E. M. Fenton.)"

The tract of land in dispute is one acre out of a tract described in a patent from the United States to Ursulo Segura as "Small Holding Claim No. 3245, containing 54.02 acres." The only boundaries that were definitely and certainly described in the deed to plaintiff were the east and west boundaries. As the tract out of which the one in dispute was carved belonged to Segura, the call "bounded on the north by land of Ursulo Segura," obviously cannot be "definitely, accurately and certainly" located without first locating the south boundary. Then with the south, east and west boundaries located the north boundary of the one acre tract can be accurately determined; but not otherwise.

The trial court erred in refusing to adopt plaintiff's requested finding of fact No. 4, as follows: "The court finds that the words in said deed, 'bounded * * * on the south by the public road,' referred to a proposed public road which the grantor, Ursulo Segura, and an adjoining land owner, Celso Sandoval, agreed to establish by dedicating to that use a strip of land fifteen feet in width along the southern boundary of the land of Ursulo Segura and a strip of land fifteen feet in width along the northern boundary of the land of Celso Sandoval; and that said road was never built or used."

The trial court erred likewise in making his finding No. 4, which is as follows: "That the 'public road' described and referred to in said deed as the south boundary of the tract so sold and conveyed was a road universally recognized as such and was being, and for a long time theretofore had been, used by the general public in going towards the east away from another public road which ran north and south through the village of Cuba, Sandoval County, New Mexico (the latter road having since been widened and enlarged and is now

known as State Highway # 44), and that there was no other public road on or running through the lands of said grantor, Ursulo Segura, said 'Public Road' and said boundary of the tract so sold and conveyed being clearly defined and equally well known."

There are other findings made by the court, all based upon testimony unfavorable to the plaintiff, unnecessary to set out particularly, and all of which are hereby set aside.

After the purchase of the land by plaintiff in 1911, the school directors employed the county surveyor, E. M. Fenton, to survey and plat a tract off of the south side of Small Holding Claim No. 3245, containing one acre of ground, which they claimed was the land purchased. Fenton testified in substance that the members of the school board told him where they wanted the land located. He saw no public road or any other road at the proposed south boundary line. That Celso Sandoval owned the land to the south.

"Q. Do you remember whether he told you to put the southern boundary of the school land as the boundary between the small holding claim of Segura and of Celso Sandoval? A. That property line between the two claims was the southern boundary with this proviso: each party was to give room, one on the south and the other on the north, for a new public road.

"Q. Was that a written agreement? A. No, it was just a verbal proviso."

"Q. For a public road that was to be built in the future? A. Yes, and it was to be located along there.

"Q. It was not there at that time? A. No.

*  *  *

"Q. Who gave you that explanation about the road, the School Board? A. Yes, the School Board.

"Q. Did you know Ursulo Segura? A. Yes.

"Q. You had known him for a good many years? A. Yes.

"Q. Did you talk with him about it? A. No.

"Q. But you were told by the School Board that these people had so agreed to make a passageway on their lands, and each one had agreed to leave so many feet on either side of the common boundary line for a road? A. Yes."

There was testimony to the effect that in 1913 the plaintiff built a school house at the west end of this tract of land as surveyed by Fenton, approximately an equal distance from the north, south and west lines, in which a school was conducted for the succeeding five years, during which time the land claimed was used as a playground by the pupils. Subsequently the property was used by the public for dances and other purposes, until it was leased by the plaintiff to the defendant in 1928.

There was evidence that the northwest corner of the school house was built over

a neighborhood road, or wagon trail (not a public road) which passed through Segura's land from east to west, long since obliterated. This the trial court held was the "public road" called for in the deed as the south boundary of the tract of land in suit. The greater part of the school house was to the south of this road.

Segura lived in the neighborhood during all this time and never at any time objected to the location of the school house or claimed title to the land in suit, nor did he list it for taxes, or pay taxes thereon.

It seems almost incredible that these wagon tracks could have been the intended south boundary of the tract in dispute. If so, Segura's land was cut in two, leaving a narrow strip a few feet wide, separated from the main body of his land by the land sold; and thereafter never claimed by him.

While the testimony of Fenton regarding the proposed public road was hearsay and not very definite, yet taken with the fact of the survey and the building of the school house thereon, and of the failure of Segura for more than twenty years to claim the land in dispute or pay taxes thereon, it is some evidence of the location of the south boundary. It is more reasonable to believe that the tract in suit was cut off the south side of Segura's land, than that it was located as found by the trial court. But, aside from these considerations, the court based his findings Nos. 4 to 8 upon testimony unfavorable to the plaintiff, which was not permissible.

Plaintiff offered in evidence the written lease, to which defendant objected because "it does not describe the lands that are claimed by the school board, and I don't know where that supports the question of title, because we admit Mr. Young was a renter of the property named in the lease." The court then stated, "This lease *is not even acknowledged.* Objection sustained." To which ruling an exception was taken by plaintiff. The court apparently assumed that an unacknowledged lease was invalid, which of course is not correct.

The uncontradicted testimony shows that the land claimed by the plaintiff was included in that described in the lease; indeed the trial court approved a requested finding of defendant's to that effect, but did not incorporate it in his decision. The court erred in refusing to admit the lease in evidence.

The plaintiff requested the trial court to find the following fact: "That plaintiff has been in possession of the land described in the complaint for more than ten years." The court endorsed the word "Adopted" thereon, but failed to embody it among the findings of his decision, filed in the case. The testimony abundantly established this fact without contradiction, and the court so held. It was error to refuse to include it in his decision.

If the facts found by the trial court, supplemented by those he should have found, will support a judgment for plaintiff, the case should be reversed. Greenfield v. Bruskas, 41 N.M. 346, 68 P.2d 921.

The defendant went into possession under a lease from the plaintiff and the court approved a requested finding of plaintiff "that at the time of the commencement of this action the defendant was in possession of the premises claimed by plaintiff." The description in the lease includes the land sued for, if it is not the identical land. We held in Romero v. Herrera, 27 N.M. 559, 203 P. 243, 244, that where no legal title is shown in either party, the one showing prior possession in himself, and those through whom he claims, will be held to have the better right, and

"The sole question is whether when the matter in issue is the prior possession of the plaintiff, and the evidence thereof is conflicting, the court can direct a verdict, for one side or the other, and not submit such question of possession to the jury. We are of the opinion that this cannot be done. That, where neither party to an action in ejectment shows legal title in himself, and the prior possession of the plaintiff and those through whom he claims is a matter upon which there is a conflict in the evidence, the court cannot properly direct a verdict, but the case should be submitted to the jury."

The admitted facts establish that plaintiff had the prior possession; that it leased the property claimed, to defendant; and that the term of the lease had expired at the time suit was brought. This gives plaintiff the better right, even assuming that it did not establish its title to the land; for the possession of the tenant was its possession, except for the purposes of the lease. Whiting v. Edmunds et al., 94 N.Y. 309; Wilhelm v. Herron, 211 Mich. 339, 178 N. W. 769.

The conclusion we have reached is not affected by the rule that where a landlord brings an action against his tenant, tendering an issue of title, or an interest in the land greater than necessary to support the tenancy (as plaintiff did in this case) the doctrine of estoppel to dispute the landlord's title ordinarily does not apply. Merchants' & Farmers' State Bank v. Olson, 189 Minn. 528, 250 N.W. 366, 89 A.L.R. 1289, and cases cited in the annotations beginning at page 1295. This question is not in the case, as plaintiff had the prior right to possession.

The cause will be reversed and remanded with instructions to grant the plaintiff a new trial.

It is so ordered.

BICKLEY, C. J., and ZINN and SADLER, JJ., concur.

MABRY, J., did not participate.