[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 10 
Did the trial court err in sustaining the motion to dismiss, treated as a demurrer to the evidence, which the heirs at law of Kittura W. Garcia, deceased, interposed when Melinda B. Montoya in an effort to establish her claimed right to the entire estate of decedent, rested in the attempted proof of an agreement to adopt? This is the question presented for decision.
The matter arose in the district court of Santa Fe County where proceedings upon the estate of Kittura Garcia, deceased, were pending upon removal from the probate court of said county. Decedent's administrator filed a petition for determination of heirship upon which notice was duly given. In response to such notice the appellees filed their claims of heirship based on blood relationship and appellant filed her claim to heirship based upon an unfulfilled agreement to adopt.
In her petition, the said Melinda Montoya, the appellant, sets forth that when a child about seven years of age, Marcelino Garcia and Kittura W. Garcia, his wife, agreed and contracted with her paternal uncle with whom she was then living and who stood in loco parentis toward her, that *Page 11 
they would take her into their home, and adopt, rear, educate and in every way treat and do for her as if she were their own child; that at the time of such agreement her mother was dead and she had been abandoned by her father, who, nevertheless, himself consented to the promised adoption.
Petitioner then alleged that pursuant to such promise the said Marcelino and Kittura Garcia took her into their home and family life, assumed all responsibility for her maintenance and care, and educated and at all times subsequent to such agreement did for her in every way as if she were their own child and held her out to others and treated her as such. Then follow allegations that the adoptive parents failed to take the legal steps provided by law for her adoption and failed to comply with their agreement and promise of adoption.
For purposes of this case it is agreed that the appellees represent the sole heirs at law of the decedent and are entitled to her estate based upon the varying degrees of blood relationship shown, unless the appellant ultimately establishes her right thereto for breach of the claimed agreement to adopt. The narrow question, as already indicated, is whether upon resting she had presented a prima facie case in support of the allegations of her petition sufficient to withstand the appellees' motion to dismiss treated as a demurrer to the evidence. This takes us at once to an analysis of the state of the proof.
The evidence disclosed that the said Marcelino Garcia and Kittura Garcia were husband and wife and childless, remaining so throughout their lives. They had been married nine years when the appellant was orphaned by the death of her mother in March, 1897. She was the eldest of four children, two boys and two girls, and at the time of her mother's death was at the home of a paternal uncle where she remained for about four months. This uncle was himself the father of ten or eleven children, residing in the home with him and his wife, their mother.
About four months following the death of her mother and when appellant was about seven years of age, she was taken into the home of Marcelino and Kittura Garcia, who treated her just as if she were their own child. They immediately placed her in school. She continued to reside in the Garcia home after first being taken into it, until August 14, 1905, the date of her marriage, except for a brief absence of about a week at the home of this uncle, as next related.
About two years after entering the Garcia home, and due to childish pique at a scolding from Mrs. Garcia for tardiness in reaching home from school, the appellant returned to the home of her uncle. Within a few days Marcelino Garcia went to the uncle's home and returned her to his own home. When he called at the uncle's home *Page 12 
for the child, the uncle said to him: "You must adopt her this time." To which statement Marcelino Garcia replied: "Yes, I will."
Both at the time the Garcias first took appellant into their home and at the time Marcelino Garcia went for her to the uncle's home, as just related, the natural father of appellant was confined in the New Mexico State Penitentiary serving a life sentence for the commission of a felony.
From the time appellant was taken into the Garcia home, with an exception hereinafter to be noted, she always went under the name of "Melinda Garcia". The Garcias provided and cared for her as if she were their own child, educated her, sending her to Loretto Academy in Santa Fe for three years, where she was registered and known as Melinda Garcia. Marcelino Garcia personally accompanied her to Loretto Academy on entering her there as a student and stated to the Mother Superior that she was not his own child but an adopted child. Each of the Garcias with whom the Mother Superior of the school was well acquainted, always spoke to her of the child as "my adopted daughter." The Garcias always introduced or spoke of appellant to others as their daughter or adopted daughter and both were heard to say on more than one occasion that they had adopted her with her father's consent.
Conforming to a Spanish custom, shortly before the announcement of the engagement of appellant and her husband, the latter's father addressed a letter to Marcelino Garcia, treated as appellant's father, asking the hand of the latter's daughter in marriage to the writer's son. Consent was reluctantly given, the Garcias objecting to a marriage at the time because of appellant's extreme youth. It was necessary, because of her age, that she have the consent of her parent or guardian and upon a printed form prepared for endorsing such consent on the application for license, Marcelino Garcia, described as "the parent (or guardian) of" the appellant, signed a written consent to her marriage.
There was only one instance after appellant was taken into the home of Marcelino and Kittura Garcia that she ever employed the name under which she was born or went under any other name than that of "Melinda Garcia." When she and her fiance were making application for a marriage license, she was about to sign the application "Melinda Garcia". Father Raberole, Pastor of Guadalupe Church in Santa Fe, who was present, informed her that she should sign under the name by which she was christened. Acting upon this advice, she did so.
Following the marriage, the appellant and her husband resided near the Garcias in a home given her by Marcelino Garcia as a wedding present. Later, this home was exchanged for one next door to the Garcias and still later this home was sold and another purchased and occupied just across the street from them. The appellant displayed toward the Garcias the affection of a child for its parents, always referring *Page 13 
to Kittura Garcia as "mamma" and the Garcias referring to appellant as either their daughter or adopted daughter and to appellant's children as their grandchildren and being referred to by these children in return as their grandparents.
When Marcelino Garcia was nearing death and a night or two before his removal to a hospital where he died within a short time, he requested of a friend who was attending him at night that he send for the appellant. This friend related what took place as follows: "A. He told me like this: `Mr. Thayer, I think my time has come and I want you to call one of my family.' I said: `Who do you want, your sister?' because Marcelino's sister lived only a little ways from there, `or your brother?' He says: `No I want my daughter, you go and call Melinda.' I went out and knocked at the door and I called her and she said she would come over, and when she came over there, I don't recall exactly what took place, but, however, he reached under the pillow and took a big purse that contained money and handed it to her, and he says: `I want you to have this, and nobody else'."
Marcelino Garcia died on April 11, 1929. Kittura W. Garcia, his wife died intestate on June 29, 1936. For about ten weeks prior to her death she was bedfast and throughout that period the appellant and her two daughters ministered to her needs and wants. It may be added that throughout the period appellant resided in the Garcia home she helped clean house and did chores and other work around the place for which she neither asked nor received pay.
Counsel for the appellant invoke against appellees the rule governing upon a demurrer to the evidence as stated in Dickerson v. Montoya, 44 N.M. 207, 100 P.2d 904, and insist the evidence disclosed a prima facie case, rendering it error for the trial court to sustain the motion to dismiss. This rule, long applied here, is stated in the Dickerson case as follows: "The question is whether there is substantial evidence in the record to identify the property conveyed by the tax deed as being that described in the complaint, and in determining this we must accept as true all portions of the testimony and all reasonable inferences flowing therefrom which tended to prove plaintiffs' case, and disregard all conflicts and all evidence which tended to weaken or disprove it. This is the rule in disposing of a motion for judgment at the conclusion of plaintiffs' testimony. Sandoval County Board of Education v. Young, 43 N.M. 397,94 P.2d 508."
For other statements of the rule see Rogers v. Balduini,28 N.M. 102, 206 P. 514; Sanchez v. Torres, 35 N.M. 383, 298 P. 408; Mansfield v. Reserve Oil Co., 38 N.M. 187, 29 P.2d 491; Merchant's Bank v. Dunn, 41 N.M. 432, 70 P.2d 760; Paulos v. Janetakos, 41 N.M. 534, 72 P.2d 1, and Sandoval County Board of Education v. Young, 43 N.M. 397, 94 P.2d 508.
The applicability of this governing rule is challenged by counsel for *Page 14 
different heirs on varying grounds. Counsel for one group of heirs counters by relying upon the Statute, 1929 Comp. § 47-609, prescribing the decree to be entered following hearing on the final account of an executor or administrator and for determination of heirship, such as this was, and insists that by letter of the statute the court was compelled to hear and weigh
the evidence, preliminary to determining heirship. The statute does not have the effect claimed for it. We have examined it carefully and find nothing in it that precludes application to such a hearing of the ordinary rule governing a demurrer to the evidence, if one of the parties prefers to take the risk, ever present, of employing such a demurrer rather than to put in his own evidence or to announce his submission of the cause on his adversary's evidence for determination on the merits. Merchant's Bank v. Dunn and Paulos v. Janetakos, supra. We do not say that upon such a hearing heirship may not be determined on a demurrer to the evidence. But, if it is, the demurrant must expect to see such evidence given the effect accorded it in the Dickerson and other cases cited supra.
Neither are we impressed that the rule is inapplicable, as urged by some of the heirs, because all of them and appellant as well were before the court as petitioners or claimants in response to the administrator's notice of a hearing to determine heirship. The obvious suggestion in this contention is that since all are plaintiffs in their assertion of heirship to decedent, none is in any position to demur against the others. It is too plain for argument, however, that here was a real lawsuit between the so-called adoptive heir on the one side and all of the blood heirs aligned against her in a common defense on the other. Whatever the form of their appearance, it vanished quickly in an alignment before the court for judicial contest. The appellees themselves were quick to sense the true situation by joining in a demurrer to the appellant's evidence. As to them, she became the plaintiff and as to her they became defendants.
Still another group of heirs present the contention that after the demurrer was interposed, the appellant invited a weighing of the evidence by requesting findings of fact, thus waiving application of the rule. We have held otherwise. Sandoval County Board of Education v. Young, supra.
We come now to consider the effect of the demurrer on the facts adduced. The appellees remind us that agreements of the kind claimed can only be deduced from evidence that is clear, cogent and convincing, citing some authorities which even go so far as to hold the evidence must establish them beyond a reasonable doubt. Obviously, these are statements and declarations respecting the weight of the evidence. But, here, the trial court had no right to weigh the evidence. That portion of it supporting appellant's case together with all favorable *Page 15 
inferences to be drawn therefrom must be accepted as true. If true, it must be deemed cogent and convincing of the existence of the ultimate facts toward which it and its favorable inferences point. Paulos v. Janetakos, supra.
The pertinent inquiry then is not whether the evidence is convincing of the facts it expressly or by permissible implication affirms. It is so necessarily, if those facts are to be taken as true. But, rather, we must determine if there is a failure in the proof, viewed most favorably, in respect of an issue of fact essential to recovery.
The agreement alleged is one made on appellant's behalf by her paternal uncle standing in loco parentis toward her with Marcelino and Kittura Garcia, husband and wife, at a time when appellant was only seven years of age. No direct evidence of an agreement with Kittura Garcia was tendered, the appellant relying upon the circumstances shown in evidence as sufficient to afford an implication that the wife joined in the claimed agreement, of which there is direct evidence, between the uncle and Marcelino Garcia. Our statutes governing adoption provide that neither spouse, not lawfully separated from the other, can adopt a child without the consent of the other, provided the one not consenting is capable of giving such consent. 1929 Comp., § 2-103.
We think the evidence before the court, oral as well as documentary, which will not be restated, was sufficient to support an inference that the wife joined in the husband's commitment to adopt appellant, if the trial court should elect to draw the inference. Under the circumstances and by virtue of the rule applicable upon a demurrer to the evidence, the trial court must accept as true, and treat as established, this favorable and highly important inference, so essential to a recovery by the appellant. The acceptance of it as true, of course, is not final but only for the purpose of the ruling on the demurrer. If treating it as true entitles appellant to a favorable order overruling the demurrer, then the appellees will be called upon to go forward with their evidence at the conclusion of which, the court will weigh the evidence and control the findings by what itmay believe to be true, not as in ruling on the demurrer by what it perforce must accept as true; or, the appellees, following an unfavorable ruling on the demurrer, may elect to submit the cause for decision on the appellant's evidence, and a like result will follow.
It is true the language relied upon to show an agreement to adopt is not extensive, even if pointed. Nevertheless, it is enough, if believed, to support a finding of an express agreement to adopt on the part of Marcelino Garcia. And, likewise, if believed, is even suggestive that a similar promise had been made at the time Marcelino Garcia first took appellant into his home, two years prior to the time of the conversation actually related on the witness stand. *Page 16 
It is not seriously urged that an agreement to adopt may not be inferred from all the circumstances in evidence. In other words, the agreement may be established either as an express or implied contract provided the proof offered is of the convincing character required in cases of this kind. Fiske v. Lawton (In re Herrick's Estate) 124 Minn. 85, 144 N.W. 455; Roberts v. Roberts, 8 Cir., 223 F. 775; Lynn v. Hockaday, 162 Mo. 111, 61 S.W. 885, 85 Am.St.Rep. 480; Fisher v. Davidson, 271 Mo. 195,195 S.W. 1024, L.R.A. 1917F, 692. Cf. Wooley v. Shell Petroleum Corporation, 39 N.M. 256, 45 P.2d 927. And if the contract itself is otherwise sufficiently established, it is not bad, as argued by the appellees, simply because the proof fails to show express agreement "to care for, educate, love and do for her in every way as if she were their own child". If the agreement "to adopt" be clearly shown, all of these things attach as legal consequences incident to the relationship. As said in Barney v. Hutchinson,25 N.M. 82, 177 P. 890, 893, where the agreement to adopt said nothing of the right to inherit: "The laws of inheritance consequently are not impaired, but follow their natural course. They operate upon the relation created by the contract the same as though the legal adoption had taken place."
Barney v. Hutchinson, supra, supports the conclusion we have reached that the demurrer was erroneously sustained, as also does Paulos v. Janetakos, supra. In the former case, also heard on demurrer to the evidence, we expressly held that failure of the agreement to embrace contractual obligations touching property rights, was not fatal to relief in the nature of specific performance. We said: "Numerous cases recognize the right to specific performance of contracts to adopt, independent of any consideration as to any contractual obligation on the part of the adopting parents with reference to property or rights flowing therefrom. In Fiske v. Lawton, 124 Minn. 85, 144 N.W. 455, in the transaction constituting the contract to adopt, nothing was said concerning property rights, and nevertheless the court held that specific performance would be decreed pursuant to this doctrine that equity considers that done which ought to have been done. See, also, Anderson v. Blakesly, 155 Iowa 430, 136 N.W. 210, which follows Chehak v. Battles, 133 Iowa 107, 110 N.W. 330, 8 L.R.A.(N.S.) 1130, 12 Ann.Cas. 140."
And again: "Notwithstanding that the contract to adopt the father of the plaintiff in this case made no mention of property rights of the adopted son, we are satisfied that equity and justice demand the specific performance of the contract, to the end that Frank C. Barney be adjudged the adopted son of Annie C. Hutchinson, and that the right of succession of the appellant, the daughter of Frank C. Barney, be recognized in accordance with the statutes in such cases made and provided." *Page 17 
It is argued that the claimed agreement to adopt lacks the corroboration required by 1929 Comp. § 45-601, providing that in suits by or against the heirs of a deceased person, an opposite or interested party to the suit shall not obtain judgment on his own evidence in respect of any matter occurring before the death of the deceased person. The purpose of corroboration, of course, is to insure as nearly as may be, the truth and validity of the claim asserted. We will not enter into a discussion of the application of the statute upon a demurrer to the evidence. Assuming its application, there are here present circumstances which, accepted as true, standing alone and unsupported by the evidence of the claimant, tend to prove the essential allegation or issue raised by the pleading, namely, the agreement to adopt. It is not necessary that the corroboration be afforded by direct evidence. If this is not available, the corroboration required by the statute may arise from circumstances. Union Land Grazing Co. v. Arce, 21 N.M. 115, 152 P. 1143; Bujac v. Wilson, 27 N.M. 105, 196 P. 527; Evans v. Evans, 44 N.M. 223, 101 P.2d 179; and Haworth v. Haworth, 123 Mo. App. 303, 100 S.W. 531, 533. The Haworth case from Missouri, last cited, is quite persuasive. The question at issue was the former existence of a lost or destroyed deed of adoption. The court found corroboration in circumstances of the kind here present. It said: "Defendant strenuously insists that the evidence was insufficient to warrant the finding, judgment, and decree of the circuit court, and cites numerous cases in support of the well-settled rule that in proceedings of this character the proof to establish the existence and contents of the lost deed must be so cogent, clear, and forcible as to leave no doubt in the mind of the chancellor. Evidence of declarations of the deceased, made in his lifetime, that he intended to adopt plaintiff as his heir, and that he had adopted him, and of the fact that plaintiff resided with the deceased, as a member of his family, from infancy until he attained his majority, was not sufficient to establish the fact that J.M. Haworth did in fact execute and acknowledge a deed of adoption; but this evidence corroborates that of the two witnesses, who swore they had seen and examined the deed, that it was recorded and was in the usual form, and recited a consideration of love and affection. The defendants offered no evidence, except on the character of some of plaintiff's witnesses."
Counsel for all appellees place great reliance upon the case, In re Candelaria's Estate, 41 N.M. 211, 67 P.2d 235. Aside from the fact that in this case the parents of the allegedly adopted child, who had never been separated, themselves testified that they had never given their consent to the adoption and that adoption never had been discussed, the appellees quite overlook that the evidence was there considered on the merits. What is said touching the quantum of proof required to establish an agreement to adopt or of the discretion to be exercised in granting or withholding *Page 18 
relief, once a final conclusion on the facts is reached on the merits, after a weighing of the evidence, necessarily can be of little aid to the chancellor in deciding whether facts accepted as true are cogent or convincing, or whether as the next step, after thus establishing the facts, his discretion is moved to award relief or to deny it.
When the court has weighed the evidence, if the facts are found as they appear upon a demurrer thereto, the chancellor will then be called upon to exercise his judicial discretion in saying whether, tested by the principles stated in the Candelaria case, relief shall be awarded or denied. The case is not ripe for such a decision on a demurrer to the evidence. Paulos v. Janetakos, supra.
Counsel for appellees seem to agree that the trial court weighed the evidence. The record supports them in this view. They insist the court had a right so to do. In this they are clearly wrong. It was error to sustain the demurrer in view of the fact that appellant's evidence, viewed most favorably, and accepted as true, made out a prima facie case.
What we have said concerning the facts is not intended to influence, and should not influence, the trial judge when he comes to weigh the evidence. An entirely different situation then confronts him from that existing on a demurrer to the evidence.
The judgment will be reversed and the cause remanded to the district court with directions to overrule the motion to dismiss treated as a demurrer to the evidence and for further proceedings in conformity with the views herein expressed.
It is so ordered.
BICKLEY, C.J., and BRICE, ZINN, and MABRY, JJ., concur.