368 P.2d 318

**In the Matter of the ESTATE of Josephine LAMFROM, Deceased.**

**Geraldine Worthington RECKTENWALD et al., Appellants,**

v.

**Robert L. LOCKARD, Appellee.**

No. 6901.

Supreme Court of Arizona.

En Banc.

Jan. 24, 1962.

Rehearing Denied March 13, 1962.

Cunningham, Carson & Messinger, Keith W. Ragan, Phoenix, for appellants.

Dallas P. Richeson, Kenneth Biaett, Phoenix, for appellee.

LOCKWOOD, Justice.

This is an appeal from a judgment entered in determination of heirship proceedings and from a final account and decree of distribution of the estate of Josephine Lamfrom.

Josephine Lamfrom died intestate in Maricopa County on February 3, 1957. Robert L. Lockard, son of Mrs. Lamfrom's deceased sister, was appointed administrator of the Lamfrom estate. He claimed to be entitled to the whole estate as the adopted son and sole heir of decedent. Objections

to his final account and petition for distribution and a complaint for determination of heirship were filed on behalf of certain other relatives of decedent who claimed distributive shares in the estate, denying that Lockard was an adopted son. Lockard's claim was based on either legal or equitable adoption.

The question of equitable adoption was tried before an advisory jury (the relatives being plaintiffs and Lockard defendant) which rendered a general verdict in favor of defendant. The court without a jury determined that defendant was also legally adopted, and entered judgment for defendant decreeing his right to inherit the entire estate.

Thereafter in probate proceedings the court, without hearing objections filed by plaintiffs to defendant's final account and petition for distribution, approved the account and ordered distribution to defendant as the son of Josephine Lamfrom.

■ Plaintiffs assign as error the trial court's conclusions that (1) a subsequent attempt by defendant's father to readopt him, after a legal adoption by the Lamfroms, was void, and in any event it did not affect his right to inherit from decedent as her legally adopted son, and (2) that defendant was decedent's son by equitable adoption. They also complain that the court in probate proceedings, after determination of heirship, failed to hear their objections to Lockard's

final account, but since they failed to state any grounds for, or argue this point, we must consider the assignment of error in this regard abandoned. Goldwaters, Inc. v. Medar, 82 Ariz. 344, 313 P.2d 410 (1957).

With regard to plaintiffs' objections to the determination of equitable adoption, four propositions of law are advanced:

1. A contract to adopt must be proved in order to establish the status of equitable adoption; a contract to adopt exists only if all the essentials of a contract are proved.

2. The status of equitable adoption cannot exist based on a contract to adopt which has been legally executed.

3. A contract to adopt made and to be performed in a state where such a contract cannot create a status of equitable adoption has no validity or effect whatsoever.

4. A contract to adopt must be proved by clear, cogent and convincing evidence; a court of equity will not decree specific performance of a contract which is indefinite and uncertain.

An examination of the evidence discloses the following: Defendant was born in Lima, Ohio, the natural son of Nona and A. R. Lockard. Nona Lockard, sister of Josephine Lamfrom died in 1920, when her son was approximately nine years old. Before her death, her sister, Mrs. Lamfrom, said she would take defendant, adopt him, and raise him as her own son. Mrs. Lam-

from and her husband, Rudolph Lamfrom, legally adopted defendant in Ohio with the written consent of A. R. Lockard. In 1921, however, A. R. Lockard filed a petition for readoption of his son in the same Ohio court, and a decree of adoption was issued. Defendant had no memory of this proceeding, nor did he remember living with his father thereafter, and there is no evidence that he did. He attended school in North Baltimore Ohio and was enrolled in Miami Military Institute in Ohio in 1922 and 1923, under the name of "Robert Lamfrom". In 1925 he was adjudged a dependent child by the Juvenile Court in Allen County, Ohio and placed in custody of a Mrs. Harner for several months, then in temporary care of an uncle, Perry Worthington, who operated a farm owned by the Lamfroms. Mrs. Lamfrom was undergoing a series of operations, but visited defendant at the farm often. In 1926 and again in 1927 the court ordered him placed in the temporary custody of Rudolph Lamfrom. In 1928 he was committed by the court to the permanent care and custody of Mr. Lamfrom, with permission to place him in a foster home with probability of adoption. During 1926 to 1928 defendant was again in the military school, under the name of "Robert Lamfrom". In 1928 defendant moved with the Lamfroms to Arizona, and attended Tempe High School under the name "Robert Lamfrom". During that summer Mrs. Lamfrom and defendant returned to Ohio for a temporary trip, and while there defendant enlisted in the Navy. Because his birth certificate showed his name to be "Lockard" he enlisted under that name, adopting the middle initial "L" for Lamfrom. He used the name "Lockard" officially during twenty years in the Navy and when married, although he was known as "Lamfrom" by friends in Arizona.

Defendant made numerous visits to the Lamfroms during his years in the Navy, and he referred to them as "mother" and "father", and they to him as "son", according to testimony of witnesses. Several witnesses testified to statements by the Lamfroms that defendant would inherit all of their property. Mr. Lamfrom died in 1943, and Mrs. Lamfrom, as executrix of his will, named herself as her husband's only heir or next of kin, no mention being made of defendant. In 1949 defendant applied for a bonus, upon retirement from the Navy, giving the names of his natural parents as mother and father, and Mrs. Lamfrom as aunt. He lived thereafter in California and New Mexico, but moved to Scottsdale, Arizona, about three months before Mrs. Lamfrom's death, where he cared for her during her final illness. Defendant testified that throughout his life, the Lamfroms led him to believe he was their adopted son.

This court has in two instances recognized the widely held doctrine of equit-

able adoption,[1] and laid down the following principles: (1) the promisor must promise in writing or orally to adopt the child; (2) the consideration flowing to the promisor must be twofold: (a) the promisee parents must turn the child over to the promisor, and (b) the child must give filial affection, devotion, association and obedience to the promisor during the latter's lifetime; (3) when upon the death of the promisor the child has not been made the legally adopted child of the promisor, equity will decree that to be done which was intended to be done and specifically enforce the contract to adopt; (4) the child will be entitled to inherit that portion of the promisor's estate which he would have inherited had the adoption been formal. Furthermore it has been held in other jurisdictions that the contract to adopt need not be express, but may be implied from the acts, conduct, and admissions of the adopting parties.[2] Since there is evidence supporting all of these requirements, and the instructions given by the trial court to the advisory jury were not in conflict with them, we conclude that the court's decision was based upon the proper law.

 With plaintiffs' contention that the Lamfroms fully performed their part of the agreement when they legally adopted defendant in 1920, we do not agree. Equity will specifically enforce a contract to adopt when it appears that the child will be deprived of a child's share of the promisor's estate, which share is implicit in the promise to adopt.[3] Although normally specific performance will lie where the child has performed his part of the agreement and the promisor has not formally adopted him it is no less applicable where, as here, there were formal proceedings but the intervening fact of the withdrawal of consent and re-adoption by the natural father (if it was actually a legal readoption) placed the child in the same position he would have been in had there been no formal proceedings; i. e. he is unable to inherit as the legal child of the promisor even though he has given the requisite filial affection and devotion. Thus in the eyes of equity the contract to adopt was not executed by the formal proceedings since the implicit promise to give a child's share of the estate has not been carried out.

 In support of plaintiffs' third proposition of law, we are referred to two Ohio cases which it is argued declare that the status of adoption can be created only through legal adoption proceedings,[4] and to

1. In re Gary's Estate, 69 Ariz. 228, 211 P.2d 815 (1949); In re Brehn's Estate, 41 Ariz. 403, 18 P.2d 1112 (1933).
2. Roberts v. Roberts, 223 F. 775 (8th Cir. 1915); Monahan v. Monahan, 14 Ill. 2d 449, 153 N.E.2d 1 (1958); Kay v. Niehaus, 298 Mo. 261, 249 S.W. 625

(1923); In re Garcia's Estate, 45 N.M. 8, 107 P.2d 866 (1940).
3. See cases cited supra note 1.
4. Glass v. Glass, 125 N.E.2d 375 (Ohio App.1952); Belden v. Armstrong, 93 Ohio App. 307, 113 N.E.2d 693, (1951).

the Restatement, Conflict of Laws §§ 142 and 332. Section 142 states that the status of adoption is created by the state of domicile of the parties thereto, and § 332 states that the law of the place of contracting determines the validity of a contract. However neither of these sections is directly concerned with *a contract to adopt*. Therefore since the alleged contract was partially performed here; the promisor lived for 29 years, died, and left property here; and defendant is presently domiciled here; and in light of the strong public policy of the forum in favor of equitable adoption,[5] we follow the rule as laid down in In re Grace's Estate, 88 Cal.App.2d 956, 963, 200 P.2d 189, 193 (1948):

"Irrespective of the general rule that the law of the place of the making governs the validity of a contract, the courts, in their effort to protect and promote the welfare of the child, have given effect to a contract to adopt, where it has been fully performed on the part of the child, although it was invalid under the laws where it was made."[6]

5. See cases cited supra note 1.
6. 2 C.J.S. Adoption of Children § 26 (1936). See also Wooley v. Shell Petroleum Corp., 39 N.M. 256, 45 P.2d 927 (1935).

As to plaintiffs' fourth proposition of law, we said, in Murillo v. Hernandez, 79 Ariz. 1, 9, 281 P.2d 786, 791 (1955):

" 'The question of whether evidence is sufficient to be clear and convincing is primarily for the trial court; his finding should not be disturbed unless we must say as a matter of law that no one could reasonably find the evidence to be clear and convincing.'[7] * * * Our duty, on appeal, begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the same conclusion which was reached."

We believe that the trial court had before it evidence on which an unprejudiced mind might reasonably have found that all the elements of a contract to adopt appeared by clear and convincing evidence. Judgment affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concur.

7. Quoting Paulsen v. Coombs, 123 Utah 49, 56, 253 P.2d 621, 624 (1953).